135 F.3d 648
 98 Cal. Daily Op. Serv. 782, 98 Daily Journal
D.A.R. 1055,
Pens. Plan Guide (CCH) P 23940A
Michael TOUMAJIAN, Plaintiff-Appellant,
v.
Richard FRAILEY and Frailey & Associates, Inc., Defendants-Appellees.
 No. 95-56213.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1997.
Decided Jan. 29, 1998.
 
 1
 Robert C. Burlison, Jr., Burlison & Luostari, Glendale, California, for plaintiff-appellant.
 
 
 2
 Ronald S. Kravitz and Lowell H. Haky, Zelle & Larson LLP, San Francisco, California, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Central District of California; J. Spencer Letts, District Judge, Presiding. D.C. No. CV-93-07210-JSL.
 
 
 4
 Before: FLETCHER and TROTT, Circuit Judges, and JENKINS,* Senior District Judge.
 
 JENKINS, District Judge:
 OVERVIEW
 
 5
 Plaintiff Michael Toumajian filed a Complaint in California state court in which he asserted that the defendants, Richard Frailey and Frailey & Associates, Inc. (collectively "Frailey"), were negligent in advising him in setting up and administering a pension plan. The defendants had the matter removed to the district court. On motion of the defendants, the district court dismissed the Complaint. Following payment of sanctions to the defendant, plaintiff was permitted to file an amended complaint. Plaintiff also filed a Motion to Remand. The district court dismissed the Amended Complaint without leave to amend and denied the Motion to Remand as moot. On appeal, the plaintiff challenges both the first and second dismissals as well as the award of sanctions. Because we conclude the action was improvidently removed in the first instance, all orders subsequently entered by the district court dismissing the Complaint and the Amended Complaint are reversed. Although our conclusion that the district court lacked subject matter jurisdiction does not necessarily invalidate the district court's award of sanctions, we also reverse that award. Accordingly, the action is remanded to the district court with directions to remand the action to the state court.
 
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 
 6
 Once again the mysteries of the Employee Retirement Income Security Act of 1974 ("ERISA")-a statute intended to provide a system of uniformity and simplicity in the complex regulatory field of employee benefits-provide added complexity in this action. Specifically, this Court, as so many before and so many still to come, must determine whether the preemptive force of ERISA acts as a bar to an otherwise run-of-the-mill state law claim of professional malpractice. For purposes of simplicity-a proposition foreign to ERISA actions-the procedural and factual history of this action is only briefly described. (The parties, active participants in the torturous history, are no doubt fully aware of the complete history so that a detailed repetition is not warranted.)
 
 
 7
 On October 22, 1993, Toumajian initially filed a Complaint in California Superior Court alleging state law claims of negligence and seeking unspecified damages from the defendants, in which he asserted that he retained Frailey, "to set up and administrate a pension and profit plan," and that as a result of Frailey's "fail[ure] to exercise reasonable care and skill" in the performance of those services, Toumajian personally sustained unascertained money damages.
 
 
 8
 Frailey removed the state action to the district court on December 2, 1993, pursuant to 28 U.S.C. § 1441(b) on the ground that district court had original jurisdiction over the action by virtue of 28 U.S.C. § 1331 in that the Complaint "arises under the Employment [sic] Retirement Income Security Act of 1974 (ERISA)." Soon thereafter Frailey filed a motion to dismiss, asserting that ERISA preempted Toumajian's state law negligence claims. Initially, on October 19, 1994, the district court dismissed the Complaint without prejudice and granted Toumajian twenty-days leave to amend.
 
 
 9
 On or about November 8, 1994, Toumajian, rather than filing an amended complaint as requested by the court, attempted to file a motion to remand. Toumajian's attempted filing, however, was thwarted by his failure to comply with the local district court rules. Instead of filing the motion by hand-delivering it to the clerk of the court, Toumajian's attorney attempted to file the motion via facsimile. Because the motion did not contain an original signature of Toumajian's attorney as required by Local Rule 3.1, the district court rejected the attempted filing. On November 29, 1994, the district court, noting that Toumajian did not file an amended complaint within twenty days, dismissed the action without leave to amend.
 
 
 10
 On December 13, 1994, Toumajian filed a motion seeking relief from the dismissal and/or reconsideration of the November 29, 1994 order. At a January 9, 1995 hearing on his motion seeking relief from dismissal, Toumajian's attorney tried to raise with the district court what he believed to be his prior outstanding motion to remand.[1] Although the district court believed it had already ruled on and denied Toumajian's motion to remand, the record indicates that it had not. There were no orders entered on the merits of that motion. The only determination made by the district court was that the motion as received by the court did not comply with the local rules because it had a "fax signature." The only court action on the motion was a Notice of Document Discrepancy, dated November 8, 1994, rejecting the attempted filing.
 
 
 11
 In addition, the record of the January 9th hearing does not support the view that the district court denied Toumajian's motion from the bench. See footnote 1, supra. Although the court stated initially that the motion was denied, it then states that: "I'll look at it. I think it was denied on the papers. If it wasn't, I'll reset it." The district court never re-set the motion for hearing.
 
 
 12
 On January 18, 1995, subject to the condition that Toumajian pay $2,500 in sanctions directly to Frailey, the district court granted Toumajian's motion for relief from dismissal and permitted Toumajian to file an amended complaint. All later rulings from the district court were based on the Amended Complaint.
 
 
 13
 In his Amended Complaint, filed on February 16, 1995, Toumajian described the action as an action for damages due to the negligence and the failure of the defendants to properly advise the plaintiff "in the setting up and administration of the plaintiff's company's employee retirement plan under the Employment [sic] Retirement Income Security Act of 1974." Specifically, Toumajian asserted that the negligence claims arose out of: (1) defendants' failure to properly advise the plaintiff on the legality of the "ERISA plan's creation, actions and administration"; (2) defendants' improper advice that "monies from the ERISA plan could be invested in [zero] coupon bonds"; (3) defendants' advice that "monies from the ERISA plan could be co-mingled with the plaintiff's monies"; (4) defendants' advice concerning "procedures to notify members of the ERISA plan"; and (5) defendants' failure to provide plaintiff with "competent and proper advice" concerning the withdrawal of "funds from the ERISA plan."
 
 
 14
 On March 17, 1995, Frailey filed a motion to dismiss the amended complaint on the grounds that ERISA preempted the state law negligence claims and that, among other things, Toumajian, as an individual, lacked standing to bring an action under ERISA. On April 3, 1995, Toumajian filed a motion to remand.
 
 
 15
 On May 31, 1995, Toumajian filed an untimely opposition to Frailey's motion to dismiss in which he again asked the district court to remand the matter to state court or, in the alternative, grant him leave to file a second amended complaint. Hearings on both the motion to dismiss and the motion to remand were held on June 12, 1995.
 
 
 16
 On July 19, 1995, the district court granted Frailey's motion to dismiss without leave to amend and denied Toumajian's motion to remand as moot. Toumajian filed a timely notice of appeal, appealing the following orders: (1) the November 29, 1994 order dismissing the original Complaint without leave to amend; (2) the January 18, 1995 order conditioning the filing of an Amended Complaint on the payment of $2,500 in sanctions to the defendants; and (3) the July 19, 1995 order dismissing the Amended Complaint and denying the motion to remand.
 
 STANDARD OF REVIEW
 
 17
 Questions of subject matter jurisdiction and removal are reviewed de novo. Kruse v. State of Hawaii, 68 F.3d 331, 333 (9th Cir.1995); Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 932 (9th Cir.1994). The burden of establishing federal subject matter jurisdiction falls on the party invoking removal. Harris, 26 F.3d at 932. The often-related issue of preemption is also a question of law reviewed de novo. Associated Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers, 109 F.3d 1353, 1355 (9th Cir.1997). The imposition of sanctions by the district court is reviewed for abuse of discretion. Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991); Buster v. Greisen, 104 F.3d 1186, 1189 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997).
 
 DISCUSSION
 
 18
 In this action, as in all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction-that is the power-to adjudicate the dispute. The foundational support for all the court's rulings flows from that power. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). If that power is missing, however, the court is not in a position to act and its decisions cannot generally be enforced. Thus, even on appeal " 'it is this court's duty to see that the District Court's jurisdiction, defined and limited by statute, is not exceeded.' " Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1026 (9th Cir.1995) (quotation omitted). So it is that we begin our review by first examining whether the federal district court had subject matter jurisdiction over the original Complaint.[2]
 
 A. Subject Matter Jurisdiction
 
 19
 The threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court. For purposes of this case, that issue turns on whether the Complaint contained a claim that "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331 & 1441(b)(1988). If so, removal was appropriate and the district court then properly adjudicated the claims contained in the Complaint. If the Complaint did not contain a cause of action that "arises under" federal law, however, the district court lacked subject matter jurisdiction and the action should have been remanded to the state court. 28 U.S.C. § 1447(c).
 
 
 20
 Our analysis regarding subject matter jurisdiction is guided by several decisions of the United States Supreme Court. The Court advises us that in determining whether an action is removable under 28 U.S.C. § 1441(b), we must apply the "well-pleaded complaint rule." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Under this rule, "a cause of action arises under federal law only when the plaintiffs' well-pleaded complaint raises issues of federal law." Id. For removal to be appropriate, a federal question must appear on the face of the complaint. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 2846-47, 77 L.Ed.2d 420 (1983).
 
 
 21
 A resulting corollary to the well-pleaded complaint rule, known as the complete preemption doctrine, provides that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. at 1546; Buster, 104 F.3d at 1188. In such a case, even if the only claim in a complaint is a state law claim, if that claim is one that is "completely preempted" by federal law, federal subject matter jurisdiction exists and removal is appropriate. See Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. at 1546-47.
 
 
 22
 The genesis for the application of the complete preemption doctrine in the ERISA context stems from Supreme Court's decision in Franchise Tax Board, where the Court, in holding that an action was improvidently removed, noted that a state law cause of action that is not only preempted by 29 U.S.C. § 1144(a),[3] but also comes within the scope of ERISA's civil enforcement provisions found in 29 U.S.C. § 1132(a), might be subject to complete preemption and, therefore, amount to a claim arising under federal law. 463 U.S. at 24, 103 S.Ct. at 2854. Subsequently, in Metropolitan Life, the Court held that complete preemption applies, and thus removal is permissible, when the complaint asserts state law claims that fall within the scope of § 1132(a). 481 U.S. at 64, 66, 107 S.Ct. at 1546-47, 1547-48.
 
 
 23
 Thus, under Metropolitan Life, if both of these conditions are met-the state law claim "relates to" an ERISA plan within the meaning of § 1144(a) and falls within the scope of ERISA's civil enforcement found in § 1132(a)-the state claims are completely preempted by ERISA and converted to federal questions, at least for the purposes of removal jurisdiction. 481 U.S. at 66, 107 S.Ct. at 1547-48; Buster, 104 F.3d at 1188; Rice v. Panchal, 65 F.3d 637, 639 (7th Cir.1995); Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 354 (3d Cir.), cert. denied, 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995).
 
 
 24
 If both conditions are not met, however, the federal court does not have subject matter jurisdiction and the matter should be remanded. Only if the complaint asserts a state law claim that can be reasonably characterized as a claim under any of ERISA's civil enforcement provisions can the action be properly removed. Metropolitan Life, 481 U.S. at 66, 107 S.Ct. at 1547-48; see also Franchise Tax Bd., 463 U.S. at 21, 103 S.Ct. at 2852 ("The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties [under § 1132(a) ], as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes."); Buster, (holding that because plaintiff's claim was not displaced by § 1132(a), defendants' complete preemption argument fails and district court lacked subject matter jurisdiction); Rice, 65 F.3d at 639 (holding that under ERISA it is the presence of claims cognizable under § 1132(a) that provides the basis for complete preemption and thus federal jurisdiction); Dukes, 57 F.3d at 354 ("The Supreme Court has determined that Congress intended the complete-preemption doctrine to apply to state law causes of action which fit within the scope of ERISA's civil-enforcement provisions.").
 
 B. "Complete" vs. "Conflict" Preemption
 
 25
 Moreover, even if a defendant has a substantial and persuasive argument that the state law claim asserted in the complaint is preempted by § 1144(a) of ERISA, a defense sometimes called "conflict preemption," as long as the claim is not capable of characterization as an ERISA claim, removal is improper. See Metropolitan Life, 481 U.S. at 63, 66, 107 S.Ct. at 1546, 1547-48; Rice, 65 F.3d at 639. The mere fact that ERISA preemption under § 1144(a) may be raised as a defense, or is in actuality a defense, does not confer jurisdiction or authorize removal. Metropolitan Life, 481 U.S. at 63, 107 S.Ct. at 1546. Accordingly, even if the district court found that the Complaint contained a state law claim that "relates to" an ERISA plan, and is thus preempted by § 1144(a), the complaint is not removable to the federal court unless it is also encompassed within ERISA's civil enforcement scheme. Id. at 64, 66, 107 S.Ct. at 1546-47, 1547-48; Franchise Tax Bd., 463 U.S. at 25-26, 103 S.Ct. at 2854-55; Harris, 26 F.3d at 934; Roessert v. Health Net, 929 F.Supp. 343, 349 (N.D.Cal.1996).
 
 
 26
 As the Courts of Appeal for both the Third and Sixth Circuit have noted, " '[r]emoval and preemption are two distinct concepts.' " Dukes, 57 F.3d at 355 (quoting Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir.1995)). The complete preemption doctrine is concerned with a more limited set of state laws, those which fall within the scope of ERISA's civil enforcement scheme. Thus a state law claim that falls outside the scope of § 1132, even if preempted under § 1144(a), is still governed by the well-pleaded complaint rule and is not removable under the complete preemption doctrine described by the Supreme Court. See Metropolitan Life, 481 U.S. at 64, 107 S.Ct. at 1546-47 (stating that ERISA preemption, without more, does not convert a state law claim into a claim arising under federal law); Franchise Tax Bd., 463 U.S. at 23-27, 103 S.Ct. at 2853-56 (holding that preemption under § 1144(a) does not permit removal if the plaintiff's claim does not fall within the scope of § 1132(a)); Dukes, 57 F.3d at 355 (noting that state law claims that fall outside the scope of ERISA's civil enforcement provisions are not removable).
 
 
 27
 This distinction is important, for if the doctrine of complete preemption does not apply, even if the defendant has a defense of "conflict preemption" within the meaning of § 1144(a) because the plaintiff's claims "relate to" an ERISA plan, the district court, being without subject matter jurisdiction, cannot rule on the preemption issue. See Dukes, 57 F.3d at 355; Harris, 26 F.3d at 934. The district court lacks power to do anything but remand the case to the state court where the preemption issue can be addressed and resolved. Franchise Tax Bd., 463 U.S. at 4, 27-28, 103 S.Ct. at 2843-44, 2855-56; Harris, 26 F.3d at 934.
 
 
 28
 In their briefs to this Court, both parties offered arguments directed to whether the claims contained in the Amended Complaint are preempted because they "relate to" an ERISA plan within the meaning of § 1144(a). In doing so the parties failed to recognize the differences we noted above between "conflict preemption" under § 1144(a), and "complete preemption" under § 1132(a).[4] Similarly, the district court also appears to have inadequately distinguished the two-complete preemption, which would confer federal jurisdiction, and conflict preemption, which does not.
 
 
 29
 C. Are the Claims in the Complaint "Completely Preempted" by ERISA?
 
 
 30
 We turn first to the determinative jurisdictional question of whether the state law claims asserted in Toumajian's original Complaint are completely preempted because they fall within the scope of § 1132(a). Because we hold that the district court had no jurisdiction, we do not reach Toumajian's claim that his state law claims do not "relate to" an ERISA plan within the meaning of § 1144(a).
 
 
 31
 In his Complaint, Toumajian, as an individual and not on behalf of any ERISA plan, asserted that the defendants were licensed accountants who were retained and employed by Toumajian "to render accounting advice and services." Specifically, Toumajian asserted that the defendants were "retained to set up and administrate a pension and profit plan for the plaintiff." Toumajian alleges that the defendants "failed to exercise reasonable care and skill" in performing these services, including "fail[ing] to do adequate research of the relevant tax laws," "fail[ing] to advise ... that the plan was illegal and that there was the possibility for criminal repercussions in executing said plan." As a result of these failures, Toumajian asked for general damages, costs, and attorney's fees. Thus, as drafted by Toumajian, the Complaint merely asserts a state law claim of professional malpractice and seeks money damages.
 
 
 32
 Section 1132(a) of ERISA, by its express terms, limits the causes of action that are available under the statute, as well as by whom and against whom they may be brought. For example, in what is the most common cause of action under ERISA, § 1132(a) authorizes a plan participant or beneficiary to bring a civil action to recover benefits due her under the plan or to enforce her rights under the plan or clarify her rights to future benefits under the terms of the plan. § 1132(a)(1)(B).
 
 
 33
 Participants and beneficiaries, along with plan fiduciaries, depending on their respective roles, are authorized to bring actions for appropriate relief for breach of fiduciary duty or for injunctions or to obtain other appropriate equitable relief to redress an ERISA violation or to enforce the terms of the plan or the provisions of ERISA. § 1132(a)(2) & (a)(3). Participants and beneficiaries may also bring an action for appropriate relief against a plan administrator who failed to provide certain enumerated benefit statements or who failed to comply with a request for information. § 1132(a)(1)(A) & (a)(4).
 
 
 34
 Toumajian did not seek relief as participant or beneficiary of the plan for benefits due or to enforce the terms of the plan. Thus, subsection (1)(B) of § 1132(a) is inapplicable. Nor did Toumajian, as a participant or beneficiary of an ERISA plan, assert that Frailey was an administrator of the plan who failed to provide him with benefits information. Accordingly, subsections (1)(A) and (4) of § 1132(a) are inapplicable. Nor does he seek relief as a participant, beneficiary, or fiduciary to enjoin any act or obtain other equitable relief to redress any violations or enforce any provisions of ERISA. Toumajian's claim seeks only compensatory money damages for professional malpractice; he does not seek any type of injunctive or equitable relief. See McLeod v. Oregon Lithoprint Inc., 102 F.3d 376, 378 (9th Cir.1996) (holding that money damages do not qualify as "equitable relief" within the meaning of § 1132(a)(3)), cert. denied, --- U.S. ----, 117 S.Ct. 1823, 137 L.Ed.2d 1030 (1997); see also Varity Corp. v. Howe, 516 U.S. 489, 506-10, 116 S.Ct. 1065, 1075-79, 134 L.Ed.2d 130 (1996) (noting that relief available under § 1132(a)(3) is limited to equitable relief). Therefore, subsection (3) of § 1132(a) is also inapplicable. None of these subsections displace Toumajian's state law claim. See Buster, 104 F.3d at 1188-89.
 
 
 35
 This leaves subsection (2) of § 1132(a) as the only possible ground for supporting federal jurisdiction. Subsection (2), incorporating § 1109 of ERISA, permits any participant, beneficiary, or fiduciary to bring a civil action against:
 
 
 36
 [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries ... shall be personally liable to make good to such plan any losses to the plan resulting from such breach, ... any shall be subject to such other equitable or remedial relief as the court may deem appropriate.
 
 
 37
 29 U.S.C. § 1109(a). Even in the event that the defendant Frailey can be considered a fiduciary to the ERISA plan, (an issue we need not determine), Toumajian is not seeking relief on behalf of an ERISA plan, as required by the express terms of § 1109(a), and our case law, see Buster, 104 F.3d at 1189 (citing Kim v. Fujikawa, 871 F.2d 1427, 1432 (9th Cir.1989)); we therefore hold that subsection (2) of § 1132(a) is also inapplicable and, therefore, does not displace Toumajian's state law claim.
 
 
 38
 Moreover, Frailey has failed to demonstrate that claims in Toumajian's original Complaint fall within § 1132(a). Neither in its notice of removal nor in its initial motion to dismiss did Frailey argue that Toumajian, as a participant or beneficiary in an ERISA plan, sought any recovery for benefits due under the plan, or sought enforcement of any present or future rights under the plan. Frailey did not argue that Toumajian's claims were linked to any violation of the terms of an ERISA plan or the provisions of ERISA, or that the claims involved the refusal or failure to provide ERISA plan statements.[5]
 
 
 39
 Importantly, Frailey did not claim to be an administrator or fiduciary of the plan. As to the original Complaint, there is no assertion that Frailey had discretionary control over the plan or its assets, or regularly provided investment advice to the plan for a fee. Lacking this discretionary authority, Frailey could not be viewed as a fiduciary for ERISA purposes. See 29 U.S.C. § 1002(21)(A); 29 C.F.R. §§ 2509.75-8 & 2510.3-21(c) (1996); Arizona State Carpenters, 125 F.3d at 722. In addition, as employer sponsor of the plan it is Toumajian, absent an express designation of another as administrator in the plan documents, and not Frailey, who would be considered the plan administrator for ERISA purposes. 29 U.S.C. § 1002(16)(A). As the removing party, it was Frailey's burden to prove that the district court had subject matter jurisdiction over the claims in Toumajian's Complaint. See Harris, 26 F.3d at 932. Unfortunately for Frailey, none of its arguments were up to that task.
 
 
 40
 In sum, our analysis of Toumajian's original Complaint suggests that because his asserted state law claims do not fall within the civil enforcement provisions of § 1132(a) of ERISA, the district court lacked jurisdiction from the outset. Therefore, the district court erred when it failed to consider the question of subject matter jurisdiction and erred when it dismissed Toumajian's original Complaint. Because subject matter jurisdiction is lacking this action must be remanded to the California Superior Court.
 
 D. Sanctions
 
 41
 Toumajian argues that when the district court conditioned the filing of his Amended Complaint on the payment of a $2,500 sanction to Frailey, it abused its discretion. As an initial matter, our conclusion that the district court lacked subject matter jurisdiction does not necessarily render the award of sanctions void. In Willy v. Coastal Corp., 503 U.S. 131, 135-39, 112 S.Ct. 1076, 1079-81, 117 L.Ed.2d 280 (1992), the Supreme Court, noting that an award of sanctions involves the determination of a collateral issue and not an adjudication of the merits of a "case or controversy," held that despite a lack of subject matter jurisdiction, a district court may properly award sanctions under Fed.R.Civ.P. 11.[6] Upholding such an award, is proper, in part, because "[t]he interest in having rules of procedure obeyed ... does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction." Id. at 139, 112 S.Ct. at 1081; see also Buster, 104 F.3d at 1190 (holding that an award of sanctions under Rule 11 survives despite a later determination that the court lacked subject matter jurisdiction).
 
 
 42
 As its basis for awarding the sanctions, the district court noted that Toumajian's failure to file the Amended Complaint was inexcusable. Apparently, the district court felt that Toumajian's excuse for not filing the Amended Complaint on time-i.e., his argument that the motion to remand should have been heard first-was unreasonable in that he should have challenged jurisdiction earlier.
 
 
 43
 As discussed earlier, the district court was obligated to consider the motion to remand, and the threshold question of subject-matter jurisdiction, when the issue was first brought to its attention. Challenges to the court's power to rule must, of necessity, be determined before the court may rule on the merits. Toumajian, while not acting with the dispatch the district court hoped for, nevertheless presented the court with a challenge to its jurisdiction. That Toumajian did so rather than filing the amended pleading the district court requested, cannot support the court's sanction. The plaintiff was correct in his understanding of the district court's hierarchy of decision-making and, therefore, should not be sanctioned for his actions. Accordingly, the award of sanctions must be reversed.
 
 CONCLUSION
 
 44
 Our conclusion that the district court lacked subject matter jurisdiction over the original complaint compels our conclusion that the action was improvidently removed under 28 U.S.C. § 1441(c). We therefore REMAND the action to the district court for the sole purpose of remanding the action to the state court. In doing so, all orders entered by the district court are necessarily VACATED. In addition, because our conclusion that the district court lacked subject matter jurisdiction effectively voids the rationale supporting the imposition of sanctions, that award is also REVERSED.
 
 
 
 *
 The Honorable Bruce S. Jenkins, Senior United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 At the hearing the following colloquy took place:
 Mr. Burlison [Toumajian's attorney]: Well, Your Honor, obviously the plaintiff submitted to Your Honor a motion to remand.
 The Court: Of course.
 Burlison: That was the key issue here. It was done-and, Your Honor, I have the papers here-it was done within the 20-day time period.
 The Court: It wasn't done timely at all. Jurisdiction you could have challenged on the first day.
 Burlison: Of course, Your Honor.
 The Court: The remand. The remand does not have to await their motion to dismiss. It did. They filed a motion to dismiss, you didn't respond to that. I dismissed with 20-days to respond to that, and you came up with a motion to remand, which wasn't good.
 Burlison: Your Honor, this motion to dismiss, if you remember the history of this case, was filed a long time ago with the Girardi & Keese firm [plaintiff's original attorneys]. Mr. Girardi found a conflict and you stayed the action to locate other counsel. Other counsel was located.
 The motion to dismiss was then placed back on the calendar and plaintiff, because the state court action has nothing to do with ERISA, obviously said to the Court, well, we will amend if we have to, because there's no allegation of federal jurisdiction in this complaint, so we had to amend.
 Within that time period, the plaintiff then did the research that I thought was adequate to determine that a motion to remand would be what the Court would want to have first to determine-
 The Court: Why?
 Burlison: -if there was jurisdiction.
 The Court: Why?
 Burlison: ... It was the plaintiff's impression, Your Honor, and I think based on the research, that the Court would want to look at the jurisdiction issues, which the plaintiff believes are strong.
 The Court: But it was never too soon to raise those issues.
 Burlison: Of course, Your Honor.
 The Court: So why did you wait until the twentieth day?
 (E.R.293-295.)
 The district court and Mr. Burlison then discussed the difficulties Burlison had in speaking with the plaintiff, who was in federal prison, and other persons who had information relevant to the motion to remand. The district court then imposed sanctions on the plaintiff for failing to file an amended complaint as ordered. The courtroom discussion then continued:
 Burlison: Your Honor, there's a motion to remand that was submitted to the Court --
 The Court: Denied.
 Burlison:--and I'd appreciate if it could be reset for hearing.
 The Court: I think its been denied already.
 Burlison: It has been denied?
 The Court: I think I considered it; that part of the reason you're here. I'll reconsider it on my own motion.
 Burlison: I appeared for that hearing because we didn't get the order showing that it was taken off the calendar, and I did not see any denial of the motion.
 Mr. Kravitz [Frailey's attorney]: Your Honor, if I can address
 that, there's no --
 The Court: I'll look at it again. No, I don't want to. I've got a roomful of people.
 I'll look at it. I think it was denied on the papers. If it wasn't, I'll reset it. I don't have that on the top of my mind, but as I sit here, I thought it was bad on the face of the papers.
 (E.R.302.)
 
 
 [2]
 We examine the original Complaint, rather than the Amended Complaint, because it appears that Toumajian initially challenged the propriety of removal at a time when the original Complaint was the operative pleading. See Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1427 (9th Cir.1984) (to determine whether removal or remand is appropriate the court will ordinarily look only to the face of the complaint); see also Kyle Railways, Inc. v. Pacific Admin. Servs., Inc., 990 F.2d 513, 516 (9th Cir.1993) (review of dismissal of ERISA claim is based only on the contents of the complaint). In the defendants' memorandum in support of its motion to dismiss the original Complaint, the defendants asserted that the federal district court has "exclusive" subject matter jurisdiction over the Complaint. In response, Toumajian informed the court that because the defendants are not fiduciaries under ERISA, the action is not an "ERISA action," but merely a state law negligence action. However unartfully presented, these assertions nevertheless raised the issue of subject matter jurisdiction before the district court. See Karambelas v. Hughes Aircraft Co., 992 F.2d 971, 973 (9th Cir.1993) (although no formal motion for remand was filed, the issue was "put squarely before the district court" when raised in opposition to a motion to dismiss). In addition, as detailed in footnote 1, supra, in November 1994, before the Complaint was amended, Toumajian attempted to file a formal motion to remand
 
 
 [3]
 In part, § 1144(a) provides for preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined by ERISA. Recently, the scope of this broad "relate to" preemption was markedly narrowed. In New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Supreme Court stated:
 [i]f "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course.... But that, of course would be to read Congress's words of limitation as mere sham, and to read the presumption against preemption out of the law whenever Congress speaks to the matter with generality.
 Id. at 655, 115 S.Ct. at 1676-77. More recently, in California Div. of Labor v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), the Court noted that:
 applying the "relate to" provision according to its terms was doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else.... The statutory text provides an illusory test, unless the Court is willing to decree a degree of pre-emption that no sensible person could have intended-which it is not.
 Id. at ----, 117 S.Ct. at 843 (Scalia, J., concurring).
 We too, have noted that " 'there are limits to the unusually broad preemptive sweep we have afforded ERISA.' " Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 723 (1997) (quoting Concha v. London, 62 F.3d 1493, 1505 (9th Cir.1995), cert. dismissed, 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996)). Fortunately, because our determination on the jurisdictional issue does not require us to determine whether Toumajian's claims fall within this "relate to" preemption, we can avoid interpreting this provision, which has been aptly labeled by Judge McLaughlin of the Court of Appeals for the Second Circuit as a "veritable Sargasso Sea of obfuscation." Travelers Ins. Co. v. Cuomo, 14 F.3d 708, 717 (2d Cir.1993), rev'd sub nom. Blue Cross & Blue Shield v. Travelers, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).
 
 
 [4]
 The defendant Frailey misstates the basic question the court must analyze. Frailey argues that the federal court must merely determine whether the claims in the complaint "relate to " an ERISA plan in order to determine whether it has subject matter jurisdiction. This position, as outlined above, is simply wrong. Not only must the claim "relate to" an ERISA plan, but it must also fall within the confines of ERISA's civil enforcement scheme in order to confer the district court with subject matter jurisdiction. Metropolitan Life, 481 U.S. at 66, 107 S.Ct. at 1547-48. The cases cited by Frailey, Gibson v. Prudential Ins. Co. of America, 915 F.2d 414 (9th Cir.1990), and Casper Air Service v. Sun Life Assurance Co. of Canada, 752 F.Supp. 1005 (D.Wyo.1990), are inapposite. They merely discuss the scope of ERISA preemption, not whether or not the court had subject matter jurisdiction. Frailey has unfortunately confused the two
 
 
 [5]
 Basically, Toumajian claims that Frailey's negligent advice got him into trouble with the law. Among other things, Toumajian commingled money and converted funds from the ERISA plan he set up. For these and other reasons, Toumajian was sent to prison. Notwithstanding his criminal conviction, Toumajian apparently believes that he performed these acts, and ultimately ended up in prison, because Frailey provided him with faulty accounting and tax advice. For this injury, he seeks money damages. Whether such a claim has any merit is not for us to decide
 
 
 [6]
 In addition, there are several statutory exceptions for the awarding of court costs and expenses even in the absence of subject matter jurisdiction. See 28 U.S.C. § 1919 (authorizing court to order "payment of just costs" upon dismissal of any action based on a lack of jurisdiction) and 28 U.S.C. § 1447(c) (upon remand for lack of subject matter jurisdiction court "may require payment of just costs and any actual expenses, including attorney's fees incurred as a result of the removal")