**ATLANTIS HEALTH PLAN, INC., Plaintiff,**

v.

**LOCAL 713, I.B.O.T.U., U.S. Group Medical Administrators, Inc. and U.S. Group Coverages, Inc., Defendants.**

No. 02 Civ. 8214.

United States District Court, S.D. New York.

April 16, 2003.

---

Christopher A. Smith, Trivella, Forte & Smith, LLP, Valhalla, NY, for Atlantis Health Plan, Inc.

Kristin M. Burke, Clifton, Budd & Demaria, LLP, New York, NY, for U.S. Group Medical Adm'rs, Inc. U.S. Group Coverages, Inc.

### DECISION AND ORDER

MARRERO, District Judge.

Atlantis Health Plan, Inc. ("Atlantis") commenced a civil action in the Supreme Court of New York, County of New York, alleging breach of contract, breach of fiduciary duty, wrongful convergence, and negligence. Atlantis seeks relief in the form of $1,000,000 in insurance premiums it al-

leges was received by defendants, Local 713, International Brotherhood of Trade Unions ("I.B.O.T.U." or "Local 713"), U.S. Group Medical Administrators, Inc. ("USGMA") and U.S. Group Coverages, Inc. ("USGC") (collectively, "Defendants"), and improperly withheld from Atlantis. Defendants removed the case to federal court, invoking the Court's original jurisdiction under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Atlantis filed the instant motion seeking to remand the case to state court and for an award of attorney's fees and costs. For the reasons set forth below, Atlantis's motion is GRANTED in part and DENIED in part.

### I. BACKGROUND[1]

Judicial rulings serve the law as countless specks of light, each small in a universe, each lending its point to a whole. Combined, the candlepower of the myriad decisions that comprise our jurisprudence shed their wisdom and guidance on our lives and times, generally illuminating clearly-defined paths of social and legal rules, and informing as to what is and is not conforming behavior under recognized norms. However, occasional dark or opaque spots do appear in discrete corners of the law. By sheer density of the subject or accreted complexity over time, these occult spaces seem to resist elucidation and defy explication even by the most discerning jurists and scholars. The rule against perpetuities and the rule in Shelly's case come to mind as two blurry points from the distant past that we still hold in awe and respect for their lasting power to mystify, symbols of enduring perplexity as much to first year law students as to the seasoned judge.

---

**1.** The factual summary that follows derives from Plaintiff's Memorandum of Law in Support of Motion to Remand, dated Nov. 15, 2002, and the Memorandum of Law of U.S. Group medical Administrators, Inc. and Local

713 IBOTU in Opposition to Plaintiff's Motion to Remand, dated January 7, 2003, and accompanying exhibits and affidavits. Except where specifically referenced, no further citation to these sources will be made.

In our time, ERISA, as the issues now before the Court illustrate, has, in the relatively brief period of its existence, come to earn the distinction as our modern contender for high rank in the law's order of obscurity. As one court perceived it, and styled in one of the many other metaphors the statute has inspired to portray its formidable labyrinths, ERISA is "a veritable Sargasso Sea of obfuscation." *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 717 (2d Cir.1993), *rev'd sub nom., Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Indeed, the Supreme Court itself, laboring through an interpretation of the statute, took the occasion to comment on the "unhelpful text and the frustrating difficulty of defining its key term...." *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671; *see also Toumajian v. Frailey*, 135 F.3d 648, 650 (9th Cir.1998).[2] Undaunted, this Court now offers a contribution to this debate, even if its flicker may be likened to striking yet another match in a black hole, if nothing else, for the value that the instant its time and spark exists may serve in guiding the next bearer of the torch.

Atlantis is a health maintenance organization ("HMO") that contracted with Local 713, a labor organization, in around June of 2001 to provide group medical insurance to the members of Local 713. Pursuant to an agreement with Atlantis (the "Group Remittance Agreement"), USGMA[3] acted as a broker in effectuating group medical coverage provided by Atlantis for the benefit of Local 713 members and collected premiums from Local 713, which were then to be paid to Atlantis.

Atlantis commenced this action on August 21, 2002 in New York Supreme Court, New York County, alleging that Defendants failed to remit payment of approximately $1,000,000 in premiums to Atlantis in breach of the Group Remittance Agreement. Defendants removed the action to this Court on October 16, 2002, claiming that federal original jurisdiction over the matter exists under ERISA. USGMA filed an answer and counterclaims on October 31, 2002, and Local 713 filed its answer and counterclaims on November 1, 2002.

USGMA and Local 713 argue that this case is properly before the Court because Atlantis's state claims are preempted by ERISA. Atlantis counters that no ERISA claim appears on the face of the complaint and that complete ERISA preemption does not apply in this case. Therefore, Atlantis asserts that this case should be remanded to state court and that Defendants should be ordered to pay Atlantis's attorneys fees and costs incurred as a result of the allegedly improper removal.

## II. DISCUSSION

### A. REMOVAL JURISDICTION

It is well settled that a case may not be removed to federal court on the

---

**2.** The Ninth Circuit, among other things displaying its prophetic power and confirming the spread of ERISA's reputation coast to coast, remarked:

> Once again the mysteries of [ERISA]—a statute intended to provide a system of uniformity and simplicity in the complex regulatory field of employee benefits—provide added complexity in this action. Specifically, this Court, as so many before and so many still to come, must determine whether the preemptive force of ERISA acts as a bar to an otherwise run-of-the-mill state law claim of professional malpractice. For pur-

poses of simplicity—a proposition foreign to ERISA actions—the procedural and factual history of this action is only briefly described.

*Toumajian*, 135 F.3d at 650.

**3.** The parties dispute whether USGC was a party to an agreement with Atlantis and whether it is a proper defendant in this lawsuit. For the purposes of the matter before the Court, the relationship between Atlantis and USGC does not affect the resolution of this motion for remand.

basis of a federal defense, even the defense of preemption, relying on what is labeled as the "well-pleaded complaint rule," and even if the defense is anticipated in the complaint and thus the federal defense is the only question at issue on removal. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (noting that under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint."); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Therefore, "[o]rdinarily, a claim of preemption is a defense to be raised in the defendant's answer, and thus cannot support jurisdiction under 28 U.S.C. § 1331 because it would not appear on the face of a well-pleaded complaint." *Plumbing Industry Bd., Plumbing Local Union No. 1 v. E.W. Howell Co., Inc.*, 126 F.3d 61, 66 (2d Cir.1997) (citing *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 154, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

■ However, a plaintiff cannot, by deliberate drafting craft and wiles designed to avoid the effect of preemption, conceal the federal aspect of a cause of action by pleading only state claims, thereby defeating removal and depriving defendant of a proper federal forum. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); *Funeral Financial Systems, Ltd. v. Solex Express, Inc.*, No. 01 Civ. 6079, 2002 WL 598530, at *4 (E.D.N.Y. April 11, 2002) ("[A] federal claim may not be brought in state court, disguised in the clothing of a state claim, merely for the purpose of bringing it in that forum.") To address this potential abuse, an exception to the well-pleaded complaint rule exists when Congress mandates "complete preemption" in a specific area of law, such as is the case with regard to ERISA preemption. "Any civil complaint raising a state law claim in [a preempted] area of law is of necessity so federal in character that it arises under federal law for purposes of 28 U.S.C. § 1331 and permits removal to federal court under 28 U.S.C. § 1441." *Howell*, 126 F.3d at 66; *accord Taylor*, 481 U.S. at 63–67, 107 S.Ct. 1542.

■ Deciphering the mysteries surrounding the circumstances under which ERISA works to supersede a conflicting state statute or common law claim has become a task demanding nothing less than oracular power. It is at this intersection, where ERISA preemption, original federal question jurisdiction under 28 U.S.C. § 1331 and removal procedure pursuant to 28 U.S.C. 1441 converge, that confusion really becomes confounded. In brief, based on the principle of complete preemption, ERISA provides a valid basis for removal if two conditions are met: (1) the state law cause of action is preempted by ERISA, and (2) that cause of action is "within the scope" of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a). *Taylor*, 481 U.S. at 64–66, 107 S.Ct. 1542; *Howell*, 126 F.3d at 66; *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 573 (2d Cir.1995).

In this case, the face of Atlantis's complaint does not include an ERISA claim: it does not explicitly invoke any provision of ERISA, nor does it seek payment of benefits, clarification of rights or enforcement of any particular term of a specific employee welfare plan under or encompassed by ERISA. In consequence, on its face, the complaint appears pleaded entirely under state common law. Therefore, since the parties are not diverse, for original jurisdiction to exist in this Court, the complete preemption doctrine must apply. Accord-

ingly, both prongs of the complete preemption doctrine must be satisfied to support removal and for the Court to exercise jurisdiction over this case.

## B. *ERISA PREEMPTION*

According to ERISA's preemption clause: "... [ERISA] shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). In defining the scope of this provision, the Supreme Court declared that a state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Supreme Court has repeatedly acknowledged the spacious reach of this language, employing fittingly all-encompassing terms to reinforce Congress's intent to establish an area of exclusive federal concern. *See California Div. of Labor Stds. Enforcement v. Dillingham Const., N.A., Inc.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). Thus, the Court has variously described ERISA preemption as " 'clearly expansive' ... [it has] 'a broad scope' ... and an 'expansive sweep' ... and is 'broadly worded' ... 'deliberately expansive' ... and 'conspicuous for its breadth.' " *Id.* (citations omitted); *see also Diduck v. Kaszycki & Sons Contractors Inc.,* 974 F.2d 270, 288 (2d Cir.1992) ("A state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted.")

Nevertheless, ERISA's preemption provision does not foreclose every state action that affects ERISA plans. As broad and clear and categorical as the ERISA preemption mandate appears to be, it is only a point of departure for the complexity the rule has spawned. The Supreme Court's early efforts to construe ERISA's expansive preemption language derived from textual analysis and lexical definitions of the term "relate to" contained in the statute. *See Howell,* 126 F.3d at 66 (citing *Shaw,* 463 U.S. at 96–97, 103 S.Ct. 2890). More recently, the Supreme Court has recognized the weakness and limitations inherent in primary reliance on the dictionary meanings of the phrase. In *Travelers,* the Court acknowledged that:

> If 'relate to' were taken to extend to the farthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for 'really', universally, relations stop nowhere.... But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.

514 U.S. at 655, 115 S.Ct. 1671 (citations omitted).

Finding the text of the statute "unhelpful" in defining the preemption clause's critical phrase and deciphering the congressional intent embodied in the statute, the Supreme Court eschewed the "uncritical literalism" that characterized its earlier approach. Rather, the Court went beyond the text, and looked instead "to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656, 115 S.Ct. 1671; *Dillingham,* 519 U.S. at 324, 117 S.Ct. 832; [4] *see also Howell,* 126 F.3d

---

**4.** Concurring in the Court's sidestepping of "literalism," Justice Scalia observed that

"[a]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else.... The statutory text provides an illusory test, unless the Court is

at 66 ("In other words, the phrase 'relate to' for purposes of legal analysis proved to be a verbal coat of too many colors.")

■ Thus, while acknowledging the broad scope and deliberately expansive sweep of ERISA preemption, the Supreme Court has also recognized the need to constrain its far-reaching implications. At the heart of its stepping back from a doctrinal adherence to the text is a recognition of the tension that that approach creates with other equally powerful imperatives, of both practical and conceptual dimensions. In a word: preemption must have its limits. Casting preemption too far out effectively would drag into federal court many ordinary state common law causes of action that rightfully fall within the purview of adjudication by state courts, as well as state law claims that implicate federal law as ancillary issues or defenses that state courts are suitably equipped and concurrently empowered to resolve—litigation that need not add its incremental burden to the federal docket.

Reflecting this concern, the Supreme Court, as a starting point to its analysis and application of federal preemption, routinely cautions that "we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *Travelers,* 514 U.S. at 654, 115 S.Ct. 1671 (citing *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). Thus, in addressing invocations of preemption, the Supreme Court has declared that: "we have worked on the 'assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* at 655, 115

S.Ct. 1671 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

■ What emerges from these doctrines is a clear message: at the borderland where textual literalism bumps up against principles of federalism, unless Congressional design is otherwise explicitly manifest and clear, the dictionary meanings of particular statutory words and phrases must yield to larger imperatives and practicalities embodied in our dual system of government. In promulgating regulation of employee benefit plans as an exclusive federal concern, Congress did not intend to displace the states' exercise of legislative or judicial authority over matters that historically have been the subjects of local concern and regulation. *See Travelers,* 514 U.S. at 661, 115 S.Ct. 1671. At bottom, the debate instructs that in enacting ERISA's preemption clause Congress had in mind more than the etymology of its expansive choice of words; it erected a regulatory framework more narrowly defined by the purposes of the statute. That intent must be discerned in the context of other pertinent constitutional values and legal principles, the application of which generally serves to circumscribe the vagueness and unfettered reach of statutory phrases.

■ Concerning the objectives of ERISA preemption, the Second Circuit has declared that in enacting the provisions of 29 U.S.C. § 1144(a):

Congress sought principally to address concerns that lack of uniformity and the administrative and financial burdens of compliance with conflicting state laws might work to the detriment of plan beneficiaries, and reduce the willingness

---

willing to decree a degree of preemption that no sensible person could have intended—which it is not."

*Id.* at 335–36, 117 S.Ct. 832 (citations omitted).

of employers to adopt such plans, or lead to a reduction in the level of benefits furnished.

*Howell,* 126 F.3d at 66 (citing *Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. 478); *see also Curiale,* 64 F.3d at 798 (noting that "Congress intended to 'establish pension plan regulation as exclusively a federal concern.'") (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). Accordingly, as the Second Circuit instructs that in assessing a claim of ERISA preemption, a court must consider that

> to overcome the anti-preemption presumption, a party challenging a statute must convince a court that there is something in the practical operation of the challenged statute to indicate that it is the type of law that Congress specifically aimed to have ERISA supersede.

*Howell,* 126 F.3d at 67 (citing *DeBuono v. NYSA–ILA Med. and Clinical Servs. Fund,* 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997)).

■ To aid the inquiry regarding ERISA preemption, the Supreme Court has articulated guidance specifically on point. First, ERISA supplants inconsistent state law where the local measure is premised on the existence of ERISA plans insofar as it makes clear reference to ERISA-protected employee benefit plans; imposes particular requirements or exemptions on such plans; or otherwise "acts immediately and exclusively upon ERISA plans"; or where "the existence of ERISA plans is essential to the law's operation." *Dillingham,* 519 U.S. at 325, 117 S.Ct. at 838. If the state law does not clearly refer to ERISA plans it may still be preempted if it has a "connection with" ERISA plans. *Id.* The Second Circuit has acknowledged that beyond these limitations, "the presumption against preemption is considerable—state laws of general application that merely impose some burdens on the administration of ERISA plans but are not 'so acute' as to force an ERISA plan to adopt certain coverage or to restrict its choice of insurers should not be disturbed." *Howell,* 126 F.3d at 67 (citing *DeBuono,* 520 U.S. at 816 n. 16, 117 S.Ct. 1747).

■ Consistent with these precepts, ERISA preempts state laws that impinge or encroach upon federal control over the regulation or administration of covered plans. *See Curiale,* 64 F.3d at 803. But, curbing the breadth of the statute, preemption does not extend to state laws that have only a "tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Dist. of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *accord Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18 (2d Cir.1996); *Conn. General Life Ins. v. Pataki,* 93 Civ. 3648, 1997 WL 128492, at *4 (S.D.N.Y. March 19, 1997) (finding no preemption because "... the plan [is] only the context in which this garden variety [cause of action] ... occurred.") For instance, ERISA does not preempt state laws that have " 'an indirect economic effect on choices made by insurance buyers, including ERISA plans.' " *Curiale,* 64 F.3d at 803 (quoting *Travelers Ins. Co.,* 514 U.S. at 645, 115 S.Ct. 1671). In a similar vein, a state law is not superseded by ERISA "simply because it contains a passing mention of or allusion to ERISA—a reference justifies preemption only if the challenged statute affects ERISA plans in a practical way." *Howell,* 126 F.3d at 68 (citing *Curiale,* 64 F.3d at 800).

The I.B.O.T.U. Health and Welfare Fund (the "Welfare Fund"), from which Atlantis was to be paid pursuant to the Group Remittance Agreement for the provision of health insurance, is an employee benefit fund to which employers make con-

tributions for the benefit of the Local 713 member employees. An employee welfare plan covered by ERISA is defined as "any plan, fund, or program which was established or maintained by an employer for the purposes of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits...." 29 U.S.C. § 1002(1)(A). Therefore, given this broad definition of an ERISA plan, the Group Remittance Agreement may be considered an ERISA plan.

The claim at issue in this case, however, is atypical of the more traditional ERISA dispute—it is not an action brought by an employee to recover benefits, enforce rights or clarify the entitlements under the terms of a qualifying plan, or by a trustee of an ERISA plan to ensure the proper administration or redress violations of the provisions of an ERISA plan, nor does it affect how benefits are calculated or paid. *See Raff v. The Travelers Ins. Co.*, No. 90 Civ. 7673, 1997 WL 473282, at *2 (S.D.N.Y. May 28, 1997). Rather, the issue at the core of this litigation concerns the enforcement of a contractual relationship between a health care insurer, a union, and an agent of the union assigned the duty of arranging for health care benefits for its members. At bottom, therefore, the ERISA plan in contention here serves only as a backdrop; it is in some respect just the context for an ordinary common law contract dispute among the parties. *See Geller*, 86 F.3d at 23.

To be sure, while Atlantis's underlying claims may not entail typical actions contemplated under ERISA, the resolution of this case may have a significant impact on the Welfare Fund. Ultimately, the monies here in dispute are funds that are integrally linked to the ERISA plan—Atlantis's claim for payment of premiums owed to it by the union and/or the union's agent con-cern misappropriation of assets of the ERISA plan. Since the Group Remittance Agreement can be fairly characterized as an ERISA plan, this dispute can fairly be characterized as one that concerns the proper administration of an ERISA plan. Furthermore, if successful, Atlantis's claims likely will have some economic impact on the Welfare Fund because the premiums that Atlantis claims the union or its agents have wrongfully withheld from it may be assets that belong to the Welfare Fund or that the plan conceivably may be called to pay out of the Welfare Fund in consequence of this litigation. On the other hand, Atlantis argues that these funds are not plan assets but are premiums that have been improperly retained by USG-MA. Without resolving this dispute, which is improper at this stage of the proceedings, the Court can not determine the full effect of this litigation's economic impact on Welfare Fund assets. In any event, the Supreme Court has made clear that an indirect economic impact on an ERISA plan resulting from conduct that may be actionable under ERISA does not, in itself, suffice to compel federal preemption. *See Curiale*, 64 F.3d at 803.

In sum, the Court does not consider the facts presented here to establish a clear case for preemption under ERISA. Nonetheless, the Court need not decide the issue of preemption. For, the Court concludes that it does not have jurisdiction over this case because the second prong of the complete preemption doctrine is clearly not satisfied. Consequently, whether a valid defense of ERISA preemption exists under the circumstances described by Atlantis's claims is a question that should be determined by the state court on remand of the case.

C. *SCOPE OF ERISA CIVIL ENFORCEMENT PROVISIONS*

Even if Defendants presented a substantial and persuasive argument

that Atlantis's state law causes of action are preempted by ERISA, unless the claims fall within the scope of the comprehensive civil enforcement provisions 29 U.S.C. § 1132, removal pursuant to 28 U.S.C. § 1441 is improper and the case must be remanded to state court. *See Taylor*, 481 U.S. at 63–66, 107 S.Ct. 1542; *Toumajian*, 135 F.3d at 654. In other words, the possibility that Defendants in this case may be able to raise ERISA preemption as a defense to Atlantis's claims, even a successful defense, does not confer jurisdiction on this Court.

■ Recognizing the application of the principles of federalism and balancing the practicalities discussed above as they pertain to preemption, for removal of an allegedly preempted ERISA claim to be appropriate requires satisfaction of a second standard. It demands a sufficient showing not only of ERISA preemption of the state law claim, but that such a claim is of the type contemplated under ERISA's civil action scheme. *See Toumajian*, 135 F.3d at 654. "Removal and preemption are two distinct concepts." *Id.* at 655. Accordingly, "[o]nly if the complaint asserts a state law claim that can be reasonably characterized as a claim under any of ERISA's civil enforcement provisions can the action be properly removed." *Id.* (citing *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. 1542); *see also Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir.1995); *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir.1995); *see also Taylor*, 481 U.S. at 64, 107 S.Ct. 1542 (stating that ERISA preemption, without more, does not convert a state law claim into a claim arising under federal law); *Franchise Tax Bd.*, 463 U.S. at 21, 103 S.Ct. 2841 ("The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties, as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes.").

This added hurdle serves a gatekeeper function, to ensure that federal courts do not import through the backdoor of removal jurisdiction causes of action that truly arise under state common law, or federal defenses over which state courts may properly exercise authority, thereby protecting against unwarranted federal intrusion into the judicial province of the states. The standard thus underscores that preemption does not equate to divestment— that is, to stripping state courts of all jurisdiction to adjudicate controversies that may implicate some aspect of federal law. *See Romney v. Lin*, 105 F.3d 806, 812 (2d Cir.1997). Accordingly, courts have found no ERISA preemption and thus no removal jurisdiction over an ordinary state common law claim for breach of contract and *prima facie* tort against a defendant that was not an ERISA employer, *see Marcella*, 293 F.3d at 44; or for medical malpractice, *see Toumajian*, 135 F.3d at 656; *see also Geller*, 86 F.3d at 23 (no ERISA preemption of state common law fraud claim where "[t]he [ERISA] plan was only the context in which this garden variety fraud occurred"); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir.1994) (no ERISA preemption of a health care provider's negligent misrepresentation claim under an ERISA plan against an insurer); *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla. Inc.*, 944 F.2d 752, 756 (10th Cir.1991); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir.1990); *Beth Israel Med. Ctr. v. Sciuto*, No. 92 Civ. 8729, 1993 WL 258636, at *1 (S.D.N.Y. July 8, 1993).

ERISA's civil enforcement provisions, set forth in 29 U.S.C. § 1132, formulate a specific remedial scheme and prescribe a detailed but limited list of civil actions contemplated under the statute:

(a) Persons empowered to bring a civil action. A civil action may be brought

(1) by a participant or beneficiary (A) for relief provided for in subsection (C) of this section, or (B) to recover benefits due to him under the terms of this plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; (2) by Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title; (3) by the Secretary, or by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

See *Howell,* 126 F.3d at 68 ("In enacting §§ 502(a) and 514(a), Congress sought to eliminate alternative state law remedies for benefit plan participants and beneficiaries, relegating such persons to the six well-integrated remedies specifically provided in the statute's civil enforcement provisions.)" (citing *Smith v. Dunham-Bush, Inc.,* 959 F.2d 6, 11 (2d Cir.1992)).

In this case, Atlantis's lawsuit, properly understood, does not fall within any of the specific civil actions or remedies described above. Even assuming that USGMA and Local 713 are correct in contending that under ERISA the parties in this case qualify as fiduciaries, the litigation would entail Atlantis as a fiduciary suing other fiduciaries on its own account for monies owed to it under a contract, not on behalf of the plan itself. None of the civil actions enumerated in § 1132 contemplates an ordinary common law contract dispute such as that presented here for collection of premiums and/or damages between parties of the kind involved in the matter at hand. *Atlantis's* state law claims do not seek to redress, by means of that litigation, violations of rules that ERISA's civil enforce-

ment provisions were designed to remedy. *Cf. Howell,* 126 F.3d at 69–70 (noting that "a state cause of action that acts as an alternative means of vindicating the rights protected by § 502(a) is 'within the scope' of the section even if the suit is directed against a defendant not liable under ERISA.")

As USGMA and Local 713 concede, the only provision potentially available to Atlantis for bringing its suit under ERISA is § 1132(a)(3), which allows a participant, beneficiary, or fiduciary of an ERISA-regulated plan to bring a civil action for injunctive or other appropriate equitable relief. However, Atlantis's action does not seek injunctive or other appropriate equitable relief. Rather, what Atlantis demands is compensatory damages for money it contends is owed to it pursuant to a contract with Defendants. The Supreme Court has explicitly held that the relief contemplated under § 1132(a) does not encompass claims for monetary damages. *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 260, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *see also Toumajian,* 135 F.3d at 656. The only subsection of § 1132(a) that allows fiduciaries to recover monetary damages is § 1132(a)(2). However, this subsection provides monetary, remedial, and equitable relief to any participant, beneficiary, or fiduciary who brings a civil action for recovery on behalf of an ERISA plan, not in the claimants individual capacity and for its own benefit. *Id.* Therefore, Atlantis's state law causes of action do not fit within the cope of ERISA's civil-enforcement provisions and are thus not subject to removal pursuant to 28 U.S.C. § 1441.

Accordingly, the Court does not have jurisdiction over this case and it must be remanded to the state court for adjudication of Atlantis's claims and any relevant defense that Defendants may raise.

296

## D. *COSTS AND ATTORNEY'S FEES*

 Atlantis also argues that it should be awarded costs and attorney's fees in accordance with 28 U.S.C. § 1447(c), which provides that an order remanding a case may require payment of just costs and actual expenses, including attorney's fees, incurred as a result of improper removal. Although it is not necessary for a court to make a finding of bad faith to make an award for costs and attorney's fees, the district court acts with discretion and flexibility in determining the propriety of such an award. *See Morgan Guaranty Trust Co. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir.1992).

In this case, considering the complexity of the subject matter and subtleties surrounding the reach of ERISA preemption, discussed above, the Court does not find it appropriate to approve such an award. The very broad scope of state law that under established precedent has been deemed preempted by ERISA, although admittedly curtailed in recent cases, creates a certain understandable impulse dictating that causes of action surrounding ERISA plans properly belong in federal courts. This case should be remanded to state court without penalty to Defendants for removing to federal court.

### III. ORDER

For the reasons set forth above, it is hereby

ORDERED that this case be remanded, without award of costs or attorneys' fees, to the New York State Supreme Court, New York County, for adjudication on the merits.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**