**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIN GENERAL HOSPITAL, a non-
profit California corporation,
                    *Plaintiff-Appellant,*

                    v.                              No. 07-16518

MODESTO & EMPIRE TRACTION                           D.C. No.
COMPANY, a California corporation;                  CV-07-01027-SI
MEDICAL BENEFITS
ADMINISTRATORS OF MD., INC., a                      OPINION
Maryland corporation; RONALD J.
WILSON,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Susan Yvonne Illston, District Judge, Presiding

Argued and Submitted
February 10, 2009—San Francisco, California

Filed September 10, 2009

Before: Dorothy W. Nelson, William A. Fletcher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge William A. Fletcher

**COUNSEL**

Viola Rita Brown, Gregory C. Lehman, Joy Young Stephenson, Barry Sullivan, STEPHENSON ACQUISTO & COLMAN, Burbank, California, for the appellant.

Bradley Alan Post, BORTON PETRINI LLP, Fresno, California, Christopher H. White, ROSS DIXON & BELL, Chicago, Illinois, Daniel J. Zollner, DYKEMA GOSSETT, PLLC, Chicago, Illinois, for the appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

We consider in this case whether § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), completely preempts a state-law action for breach of contract, negligent misrepresentation, quantum meruit and estoppel. Because the state-law claims could not be pursued under § 502(a)(1)(B), and because they rely on legal duties that are independent from duties under any benefit plan established under ERISA, we hold that they are not completely preempted. Because the claims are not completely preempted under § 502(a)(1)(B), there is no federal question subject matter jurisdiction in federal court. Removal from state court was therefore improper.

## I.   Background

According to its complaint, Marin General Hospital ("the Hospital") telephoned the Medical Benefits Administrators of

M.D., Inc., ("MBAMD") on April 8, 2004, to confirm that a prospective patient had health insurance through an ERISA plan provided by his employer, Modesto & Empire Traction Co. ("Modesto"). MBAMD was the administrator of Modesto's plan. According to the complaint, MBAMD orally verified the patient's coverage, authorized treatment, and agreed to cover 90% of the patient's medical expenses at the Hospital.

Between April 19 and April 24, 2004, the Hospital performed a lumbar fusion procedure on the patient. The Hospital then submitted a bill to MBAMD for $178,926.54. MBAMD paid the Hospital $46,655.54 and stated in a letter that the Hospital was not entitled to further payment. The Hospital sent MBAMD a letter stating that "[p]er your contract this claim should be paid at 90% of total charges." MBAMD denied that it had such a contract with the Hospital and refused to make additional payment.

On December 8, 2006, the Hospital filed suit in California state court against Modesto, MBAMD, and MBAMD's CEO and Chairman Ronald Wilson (collectively "defendants") for breach of an implied contract, breach of an oral contract, negligent misrepresentation, quantum meruit, and estoppel. Defendants removed the suit to federal district court on the ground that ERISA completely preempted the Hospital's claims. The Hospital moved to remand to state court, arguing that it alleged only state-law claims in its complaint, and that these claims were not completely preempted under ERISA. Defendants moved to dismiss, arguing that ERISA preempted the Hospital's state-law claims and that the Hospital failed to allege any cognizable claims under ERISA.

The court denied the Hospital's motion to remand and dismissed its complaint. The court concluded that the Hospital's only remedy was under § 502(a)(1)(B), a subsection of ERISA's civil remedy provision for plan participants and beneficiaries, and that the Hospital's complaint failed to suffi-

ciently allege a cause of action under that subsection. The court granted the Hospital leave to amend. The Hospital's amended complaint, like its first complaint, alleged only state-law claims. The Hospital again moved for remand to state court, and defendants moved to dismiss. The court dismissed without leave to amend and entered judgment in favor of defendants. The Hospital timely appealed.

## II.    Standard of Review

The question in this case is whether the Hospital's state-law claims are completely preempted under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and thus whether the case was properly removed from state to federal court. Removal was proper only if the Hospital's claims are completely preempted. The existence of subject matter jurisdiction is a question of law that we review de novo. *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994). The burden of establishing federal subject matter jurisdiction falls on the party invoking removal. *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998).

## III.    Discussion

**[1]** Defendants removed the Hospital's state court action to federal court based on federal question jurisdiction. 28 U.S.C. §§ 1331(a), 1441(a). Generally speaking, "[a] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989). "The well-pleaded complaint rule is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (internal quotation marks omitted). The Hospital's complaint asserts only state-law causes of action, and defendants' preemption defense would appear in its answer if it ever filed one. But defendants argue that the Hospital's suit comes within the exception to the well-pleaded complaint rule

for state-law causes of action that are completely preempted by § 502(a) of ERISA. We agree with defendants that there is an exception to the well-pleaded complaint rule for state-law causes of action that are completely preempted by § 502(a). However, for the reasons that follow, we disagree with defendants' contention that the Hospital's causes of action are completely preempted.

### A.   Complete Preemption under ERISA

The parties in this case have not clearly understood the difference between complete preemption under ERISA § 502(a), 29 U.S.C. § 1132(a), and conflict preemption under ERISA § 514(a), 29 U.S.C. § 1144(a). We take this opportunity to make clear the difference between the two kinds of preemption, and to make clear the different jurisdictional consequences that result from these two kinds of preemption.

**[2]** Complete preemption under § 502(a) is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008). The Supreme Court first articulated, indeed created, the doctrine of complete preemption under § 502(a) of ERISA as a basis for federal question removal jurisdiction under 28 U.S.C. § 1441(a) in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987). The Court held that § 502(a) reflected Congress's intent to "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63 64. The Court explained that while "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff 's suit," *id.* at 63, Congress had "clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* at 66.

Complete preemption removal is an exception to the otherwise applicable rule that a "plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004). The general rule is that a defense of federal preemption of a state-law claim, even conflict preemption under § 514(a) of ERISA, is an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a). A provision of state law may "relate to" an ERISA benefit plan, and may therefore be preempted under § 514(a). *See* 29 U.S.C. § 1144(a) (the relevant provisions of ERISA "shall supersede any and all State laws insofar as they may . . . *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b)" (emphasis added)). But a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court.

**[3]** A party seeking removal based on federal question jurisdiction must show either that the state-law causes of action are completely preempted by § 502(a) of ERISA, or that some other basis exists for federal question jurisdiction. If a complaint alleges only state-law claims, and if these claims are entirely encompassed by § 502(a), that complaint is converted from "an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life*, 481 U.S. at 65 66. But "if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of [§ 514(a)] because the plaintiff's claims 'relate to' an ERISA plan, the district court [is] without subject matter jurisdiction[.]" *Toumajian*, 135 F.3d at 655.

We may have been partially responsible for the parties' confusion between complete preemption under § 502(a), which provides a basis for federal question removal jurisdiction, and conflict preemption under § 514(a), which does not.

Some of our prior opinions dealing with complete preemption under § 502(a) have used the terminology "relate to" even though that terminology is relevant to conflict preemption under § 514(a) rather than complete preemption under § 502(a). *See, e.g.*, *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1009 (9th Cir. 1995) ("We hold that the district court correctly concluded that the independent state law claims . . . lie outside the bounds of the ERISA 'relates to standard' . . . ."). However, some of our more recent decisions have made clear the distinction between complete preemption and conflict preemption. *See, e.g.*, *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225-27 (9th Cir. 2005) (observing that a court need not consider whether a state statute "relates to" ERISA under § 514(a) when considering § 502(a) complete preemption); *Toumajian*, 135 F.3d at 654 (contrasting § 514(a) and § 502(a)).

The Supreme Court's recent opinion in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), is instructive. In *Davila*, a participant in and a beneficiary of ERISA-regulated employee benefit plans (collectively, "plaintiffs") brought separate state-law suits in state court arising out of injuries sustained as a consequence of their plans' denials of coverage. *Id.* at 204-05. Plaintiffs alleged that their plans' "refusal to cover the requested services violated their duty to exercise ordinary care when making health care treatment decisions, and that these refusals 'proximately caused' their injuries." *Id.* at 205 (quotations omitted). The plans removed plaintiffs' suits to federal district courts, contending that their claims "fit within the scope of, and were therefore completely pre-empted by, ERISA § 502(a)." *Id.*

The Court began its analysis in *Davila* by quoting § 502(a)(1)(B). That section provides:

> A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights

> under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

The Court wrote, "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." 542 U.S. at 210. Under § 502(a)(1)(B), a "participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits." *Id.*

**[4]** If state-law causes of action come within the scope of § 502(a)(1)(B), those causes of action are completely preempted, and the only possible cause of action is under § 502(a)(1)(B). In that event, a federal district court has federal question jurisdiction, either original jurisdiction under § 1331(a) or removal jurisdiction under § 1441(a), to decide whether the plaintiff has stated a cause of action under § 502(a)(1)(B). In order to determine whether an asserted state-law cause of action comes within the scope of § 502(a)(1)(B), the Court formulated a two-prong test. Under *Davila*, a state-law cause of action is completely preempted if (1) "an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id.*

The Court in *Davila* concluded that the plaintiffs' state-law causes of action were completely preempted and that removal to federal court under § 1441(a) was therefore proper. The Court noted, under the first prong of its test, that the plaintiffs' only legal claims were "about denials of coverage promised under the terms of ERISA-regulated employee benefit plans." *Id.* at 211. "Upon the denial of benefits, [plaintiffs] could have paid for the treatment themselves and then sought reimbursement through a § 502(a)(1)(B) action, or sought a preliminary injunction." *Id.* (citation omitted). Therefore,

according to the Court, plaintiffs could have brought suit under § 502(a)(1)(B).

Under the second prong, plaintiffs argued that an independent state statute constituted "an independent legal duty," and that their state-law claims under the statute were therefore not preempted. *Id.* at 212. The Supreme Court disagreed, concluding that the duties imposed by the state statute "do not arise independently of ERISA or the plan terms." *Id.* This was so because the standards set forth in the state statute at issue " 'create no obligation on the part of the health insurance carrier . . . to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity.' " *Id.* at 213 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 88.002(d)). There was thus no independent liability under the state statute because the plan denied coverage for treatment not covered by the plan. The plaintiffs' action was therefore "only to rectify a wrongful denial of benefits promised under [an] ERISA-regulated plan[ ], and [did] not attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 214.

## B.   Application of *Davila*

The two-prong test of *Davila* is in the conjunctive. A state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied. In the case before us, neither is satisfied. First, the Hospital could not have brought its state-law claim under § 502(a)(1)(B) of ERISA. Second, the Hospital seeks to remedy violations of legal duties that are independent of ERISA. The Hospital's state court suit is therefore not completely preempted by § 502(a)(1)(B).

### 1. *Davila*'s First Prong

The question under the first prong of *Davila* is whether a plaintiff seeking to assert a state-law claim "at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)." 542 U.S. at 210. For the reasons that follow,

we conclude that the Hospital could not have brought its state-law claims under § 502(a)(1)(B).

[5] The Hospital's complaint relies on California state law to allege breach of an implied contract, breach of an oral contract, negligent misrepresentation, quantum meruit, and estoppel. All of these claims arise out of the telephone conversation in which MBAMD allegedly agreed to pay 90% of the patient's hospital charges. MBAMD has already paid the Hospital part of the patient's charges. That payment was made to the Hospital in its capacity as an assignee of the patient's rights under his ERISA plan. The Hospital is now seeking additional payment, in an amount necessary to bring the total payment up to 90% of its charges.

The Hospital does not contend that it is owed this additional amount because it is owed under the patient's ERISA plan. Quite the opposite. The Hospital is claiming this amount precisely because it is not owed under the patient's ERISA plan. The Hospital is contending that this additional amount is owed based on its alleged oral contract with MBAMD.

The Hospital's state-law claims in this case thus are unlike those in *Davila*, where plaintiffs "complain[ed] only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans." 542 U.S. at 211. Plaintiffs' state-law claims for payment under the ERISA plans duplicated those that were available under § 502(a)(1)(B). Plaintiffs in *Davila* therefore could have, and should have, brought suit under § 502(a)(1)(B).

*Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999), is analytically similar to the case now before us. Though decided earlier, *Blue Cross* is consistent with the Supreme Court's decision in *Davila*. In *Blue Cross*, we decided "whether the claims of medical providers against a health care plan for breach of their provider agreements are preempted by

[ERISA]." *Id.* at 1047. Providers of medical services ("Providers") sued Blue Cross for breach of contract, alleging that Blue Cross had improperly changed the fee schedule according to which providers were to be compensated. *Id.* at 1048. Blue Cross argued that the "Providers' right to receive reimbursement from Blue Cross depends upon the assignment of the right to benefits for payment for medical services from their patients, some of whom are beneficiaries of ERISA-covered health plans." *Id.* at 1050. Therefore, Blue Cross argued, the Providers' claims were unavoidably "claims for benefits under the terms of ERISA benefit plans and fall within § 502(a)(1)(B)." *Id.*

We disagreed. We wrote that the Providers did not contend that Blue Cross had violated the terms of an ERISA plan, but rather that it had breached a separate contract. *Id.* at 1051. We explained that "the Providers are asserting contractual breaches . . . that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross." *Id.* The patients in *Blue Cross* had assigned their ERISA rights to Providers, so Providers would have had standing to pursue those rights under § 502(a)(1)(B) had they wished to do so. *Id.* (discussing Ninth Circuit cases and explaining that a "provider-assignee stands in the shoes of the beneficiary, [and hence] has standing to sue under § 502(a)(1)(B) to recover benefits due under the plan"). But the court in *Blue Cross* explained that Providers were suing based upon different asserted legal obligations, namely the terms of the "executed provider agreements." *Id.* The mere fact that Providers could have brought suit against Blue Cross under § 502(a)(1)(B) did not automatically mean that Providers could not bring some other suit against Blue Cross based on some other legal obligation.

**[6]** As in *Blue Cross*, in the case before us the patient assigned to the Hospital any claim he had under his ERISA plan. Pursuant to that assignment, the Hospital was paid the money owed to the patient under the ERISA plan. The Hospi-

tal now seeks more money based upon a different obligation. The obligation to pay this additional money does not stem from the ERISA plan, and the Hospital is therefore not suing as the assignee of an ERISA plan participant or beneficiary under § 502(a)(1)(B). Rather, the asserted obligation to make the additional payment stems from the alleged oral contract between the Hospital and MBAMD. As in *Blue Cross*, the Hospital is not suing defendants based on any assignment from the patient of his rights under his ERISA plan pursuant to § 502(a)(1)(B); rather, it is suing in its own right pursuant to an independent obligation.

Defendants make two arguments, both of which fail. First, they argue that since the claims brought by the Hospital "relate to" the patient's ERISA plan, they come within the scope of § 502(a)(1)(B). Second, they argue that because the Hospital had a right to sue under § 502(a)(1)(B) by virtue of its assignment from the patient, it could only bring suit under § 502(a)(1)(B). We address these arguments in turn.

[7] First, defendants contend that because the state action "relates to" the patient's ERISA plan, it is completely preempted. This argument is based on a misunderstanding of complete preemption under § 502(a)(1)(B). As we explain above, the question whether a law or claim "relates to" an ERISA plan is not the test for complete preemption under § 502(a)(1)(B). Rather, it is the test for conflict preemption under § 514(a).

[8] A defense of conflict preemption under § 514(a) does not provide a basis for federal question jurisdiction under either § 1331(a) or § 1441(a). The Supreme Court has explained that, in cases such as this one,

> federal law becomes relevant only by way of a defense to an obligation created entirely by state law, and then only if [the Hospital] has made out a valid claim for relief under state law. The well-pleaded

complaint rule was framed to deal with precisely this situation.

. . . [S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense including the defense of preemption . . . .

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 14 (1983) (citations omitted). *See also Met. Life Ins. Co.*, 481 U.S. at 64 ("ERISA preemption [under § 514], without more, does not convert a state claim into an action arising under federal law."). Defendants are free to assert in state court a defense of conflict preemption under § 514(a), but they cannot rely on that defense to establish federal question jurisdiction.

Second, defendants argue that because the Hospital was assigned the patient's rights to payment under his ERISA plan, it was prevented from seeking additional payment under state law. That is, they argue that because the Hospital could have brought a suit under § 502(a)(1)(B) for payments owed to the patient by virtue of the terms of the ERISA plan, this is the *only* suit the Hospital could bring. This argument is inconsistent with our analysis in *Blue Cross*. There we concluded that, even though the Providers had received an assignment of the patient's medical rights and hence could have brought a suit under ERISA, there was "no basis to conclude that the mere fact of assignment converts the Providers' claims [in this case] into claims to recover benefits under the terms of an ERISA plan." 187 F.3d at 1052.

[9] We conclude that the Hospital's state-law claims based on its alleged oral contract with MBAMD were not brought, and could not have been brought, under § 502(a)(1)(B). Therefore, the Hospital's state-law claims do not satisfy the first prong of *Davila*.

## 2.  *Davila*'s Second Prong

The question under the second prong of *Davila* is whether "there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. at 210. If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B). For the reasons that follow, we conclude that the Hospital's claims in this suit are based on independent legal duties.

In this suit now before us, the Hospital asserts state-law claims. These claims do not rely on, and are independent of, any duty under an ERISA plan. In *Davila*, plaintiffs argued that a state statute created an independent legal duty. But the Court noted that the statute did not create any legal duty where, as had occurred in *Davila*, there had been a denial of coverage under the terms of an ERISA plan. The state statute imposed only an obligation to make the payments required under the plan. Thus, in *Davila*, there was no independent legal duty imposed under state law. In this case, by contrast, the Hospital contends that MBAMD entered into an independent oral contract during the April 8 telephone call. The various state-law claims asserted by the Hospital all arise out what was allegedly said during that call.

**[10]** Defendants contend that since the remedy the Hospital seeks — the payment of money — is the same as a possible remedy under § 502(a)(1)(B), the Hospital's suit amounts to a claim under § 502(a)(1)(B). This misunderstands the nature of the second prong of the *Davila* test. Under this prong, we ask only whether "there is no other independent legal duty that is implicated" by a defendant's actions. We do not ask whether that legal duty provides for a similar remedy, such as the payment of money. Defendants also continue to confuse conflict preemption under § 514(a) with complete preemption under § 502(a)(1)(B). It is not enough for complete preemption that the contract and tort claims "relate to" the underlying

ERISA plan, or that ERISA § 502(a)(1)(B) may provide a similar remedy. The question under the second prong of *Davila* is whether the complaint relies on a legal duty that arises independently of ERISA. Since the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on "other independent legal dut[ies]" within the meaning of *Davila*.

[11] We conclude that the Hospital's state-law claims based on its alleged oral contract with EBAMD were based on an independent legal duty, and that the Hospital's claims therefore do not satisfy the second prong of *Davila*.

### C.   Related Ninth Circuit precedent

Our conclusion that the Hospital's state law claims are not completely preempted by § 502(a)(1)(B) is supported by our recent decision in *Cedars-Sinai Medical Center v. National League of Postmasters of the United States*, 497 F.3d 972 (9th Cir. 2007). In that case, the Cedars-Sinai Medical Center ("Cedars-Sinai") brought a state-law action against the administrator of a federal employees' benefit plan alleging, *inter alia*, breach of contract and negligent misrepresentation in connection with partial reimbursement of claims for medical treatment. The administrator removed the suit to federal district court. *Id.* at 974. The district court dismissed the suit on the ground that Cedars-Sinai's claims were preempted by the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901.

FEHBA and ERISA are different federal statutes, but their preemption provisions are analytically similar. *See, e.g.*, *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 393-94 (9th Cir. 2002) (holding that FEHBA's complete preemption provision "closely resembles ERISA's express preemption provision, and precedent interpreting the ERISA provision thus provides authority for cases involving the

FEHBA provision"). Indeed, our opinion in *Cedars-Sinai* was based almost entirely on cases decided under ERISA. *See Cedars-Sinai*, 497 F.3d at 977 n.2 ("Because there is no Ninth Circuit authority discussing FEHBA pre-emption issues involving the claims of a third-party health care provider, we may look to analogous cases involving the application of ERISA's pre-emption provision.").

We reversed the decision of the district court, holding that Cedars-Sinai's state-law claims were not completely pre-empted. We noted that "Cedars-Sinai is suing as a third-party claiming damages, and not as an assignee of rights to benefits." *Id.* at 978. We cited to *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995), where a medical services provider was permitted to pursue a state-law cause of action against an ERISA plan. As in *Cedars-Sinai* and in this case, the plaintiff brought suit in state court relying, *inter alia*, on state-law claims of breach of contract and negligent misrepresentation. *Id.* at 974. Since those claims were pursued "not as an assignee of a purported ERISA beneficiary, but as an independent entity claiming damages," *Cedars-Sinai*, 497 F.3d at 978 (quotations omitted), we held that they were not completely preempted.

## Conclusion

**[12]** For the foregoing reasons, we hold that the Hospital's state-law claims are not completely preempted by § 502(a)(1)(B). They could not be brought under 502(a)(1)(B), and they rely on independent legal obligations. Because the Hospital's claims are not completely preempted, there is no federal question removal jurisdiction under 28 U.S.C. § 1441(a), and the district court should have remanded to the state court for the Hospital's suit to proceed. Defendants may assert in state court their defense of conflict pre-emption under § 514(a), as well as any other defenses they might have.

REVERSED and REMANDED with instructions to REMAND to state court.