Filed 7/31/23  Desert Regional Medical Center v. Teamsters and Food Employers etc. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| DESERT REGIONAL MEDICAL CENTER, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TEAMSTERS AND FOOD EMPLOYERS SECURITY TRUST FUND, <br><br> Defendant and Respondent. | E078587 <br><br> (Super.Ct.No. PSC2000216) <br><br> OPINION |

APPEAL from the Superior Court of Riverside County. Kira L. Klatchko, Judge.

Affirmed.

Helton Law Group, Edward A. Stumpp and Casey E. Mitchnick for Plaintiff and Appellant.

Seyfarth Shaw, F. Scott Page and Kiran Aftab Seldon for Defendant and Respondent.

Appellant Desert Regional Medical Center, Inc. (Desert Regional) sued Respondent Teamsters and Food Employers Security Trust Fund (the Trust) seeking payment for health care services provided to a person eligible for benefits under the Trust's health benefits plan. The trial judge granted summary judgment in favor of the Trust.

State law causes of action which seek to recover unpaid benefits under a welfare benefit plan regulated under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.) are generally conflict preempted. Like the trial judge, we conclude Desert Regional's claims for breach of contract and account stated are conflict preempted under section 514 of ERISA because they seek payment of benefits under such a plan. We therefore affirm the judgment.

# I

## FACTS

A. *The Institutions and Organizations*

Desert Regional is a hospital located in Palm Springs in Riverside County. The Trust is a multiple employer express trust established and maintained in accordance with section 302(c)(5) of the Labor-Management Relations Act, title 29 United States Code section 186(c)(5), under the terms of various collective bargaining agreements between the Teamsters Union and employers in the food industry.

The Trust provides health care and similar benefits to participants and beneficiaries in accordance with a written benefits plan. The health care benefits are paid

2

for primarily by employer contributions at rates specified in the collective bargaining agreements. BeneSys Administrators (BeneSys), are third party administrators the Trust hired to execute their responsibilities, an arrangement typical for trust funds governed under ERISA. BeneSys oversees the collection of contributions and other payments and provides benefits under the written benefits plan. BeneSys is not a party to this case.

Anthem Blue Cross of California (Anthem) contracts with health care providers and funds. For the Trust, Anthem provided "utilization management services" and access to Anthem's network of health care providers in return for an amount paid monthly for every member of the Trust. One of Anthem's roles is to review medical procedures health care providers propose to undertake for plan beneficiaries and determine whether the procedures are medically necessary. Anthem also priced claims for medical services rendered to Fund participants. Anthem is not a party to this case.

Anthem and the Trust had not entered a final written agreement at the time of the events that gave rise to this lawsuit. However, they were in negotiations, and the Trust did use Anthem's services at the time in accordance with their annual rate sheets. When Anthem certified a medical procedure as necessary and priced the claim for the Trust, they would transmit the claim information to the Trust through BeneSys, who would decide what amount would be paid under the plan's exclusions and limitations.

In late March 2016, a beneficiary of the Trust was involved in a serious motorcycle accident and admitted to Desert Regional for emergency medical care. The

patient received care and was discharged in April 2016, after incurring $567,764.50 in charges.

The Trust ultimately denied coverage and refused to pay Desert Regional because, despite repeated requests, the patient failed to return third party liability documentation, including a lien agreement form required under the benefits plan which would have enabled the Trust to recover any benefits it might have to pay out.

B. *The ERISA Plan*

The Trust's written plan of benefits is the Teamsters and Food Employers Security Trust Fund Restated Plan Document (the benefits plan), which is an employee "welfare benefit plan" within the meaning of ERISA section 3(1) and (3), title 29 United States Code section 1102 (b)(1) and (3). The Trust publishes a summary of the benefits it provides to its participants and beneficiaries.

The benefits plan provides coverage of health and welfare benefits for its participants. But it also contains exclusions and limitations. For example, the benefits plan provides "All benefits contained herein shall be payable upon timely receipt by the Fund Administrative Office . . . of written proof satisfactory to the Trustees covering the occurrence, character, and extent of the event for which claim is made."

The benefits summary specifies "Claims should be submitted within ninety (90) days from the date services are rendered for an illness or injury, but no later than twelve (12) months from the date of the service, except in circumstances where claims are subject to Coordination of Benefits. Failure to file a claim in a timely manner may result

4

in the denial of your claim." The benefits summary also says, "After you submit a claim, you may be requested to provide additional information or complete a questionnaire in order to establish a possible work-related injury or illness, third party liability, coordination of benefits or clarify services you are seeking. You must promptly provide the requested information in order to avoid any delay in the processing of your claim."

The benefits summary says a beneficiary must provide a lien to recover amounts paid under the plan in the event a third party is found liable. "If you or your Dependent's injury or illness is in any way caused by the act or omission of a third party who is or may be legally liable or responsible for the injury or illness, no benefits are payable nor paid under this Plan unless you and/or your Dependent contractually agree in writing in a form satisfactory to the Trustees, to reimburse the Plan from any recovery received by you or your Dependent in an amount equal to the benefits paid by the Plan when a recovery is obtained from the third party or the third party's insurer." The benefits summary specifies, "The Trust will require the execution of an Assignment and Subrogation Agreement and Third Party Lien Form by the patient and/or you as the covered Employee as a condition for payment of benefits," but reserves the right to recover from the third party even without the completed paperwork.

C. *Desert Regional's Agreements with Anthem*

Desert Regional and Anthem (formerly Blue Cross) entered agreements under which Desert Regional agreed to provide hospital services at prices lower than its listed rates in exchange for participation in Anthem's managed care network. In discovery,

Desert Regional identified two agreements—a 2016 agreement with Anthem and a 2008 agreement with Blue Cross of California. Both agreements were entered by Desert Regional and Anthem and Blue Cross, and the Trust was not a party to either agreement. The 2008 agreement was in effect at the time Desert Regional provided the medical services at issue in this case.

Both agreements recognize health plans like the Trust have their own arrangements with Anthem. The 2016 agreement identifies organizations like the Trust as "Other Payors," defined as entities "utilizing the Managed Care Network(s) . . . [under] an agreement with Anthem," including "self-administered or self-insured programs providing Health Benefit Plans." The 2008 Agreement had a nearly identical provision. " 'Other Payors' means persons or entities utilizing the Managed Care Network [under] an agreement with Blue Cross, including . . . self-administered or self-insured programs providing health care benefits."

The 2016 agreement provides Anthem would verify and guarantee patient eligibility and specifies that if Desert Regional is "advised that the [patient] is eligible, [Desert Regional] is entitled to payment for Health Services that are Covered Services rendered, covered under, and *subject to the exclusions and limitations of the relevant Health Benefit Plan*." (Italics added.) The agreement says "verification of [patient] eligibility information is not a preauthorization by the Plan regarding the Medical Necessity of the Health Services provided, nor that the services are Covered Services." Another provisions says, "Once Anthem determines Plan has any payment liability, all

6

Complete Claims will be adjudicated in accordance with the terms and conditions of a Covered Individual's Health Benefit Plan" and Anthem's compensation schedule. "Health Benefit Plan" is defined as "the document(s) describing the partially or wholly insured, underwritten, and/or administered, marketed health care benefits," and includes "arrangements established by Anthem or by persons or entities utilizing the Managed Care Network pursuant to an agreement with Anthem."

The 2008 Agreement had similar limitations. "If [Desert Regional] is notified that the Member is eligible, [Desert Regional] is entitled to payments for services rendered, covered under, and *subject to the exclusions and limitations of the relevant Benefit Agreement*." (Italics added.) The agreement defined "Benefit Agreement" to include "arrangements established by Blue Cross or by persons or entities utilizing the Managed Care Network pursuant to an agreement with BLUE CROSS." The agreement also specifies "guarantee of eligibility is not a guarantee of payment."

D. *The Claim for Benefits*

The patient was admitted to Desert Regional for emergency treatment for injuries sustained in a motorcycle accident on March 29, 2016. The patient remained under care at Desert Regional until April 27, 2016.

Early on, Desert Regional received confirmation from Anthem that the patient was eligible for benefits under the benefits plan. In late April, Anthem confirmed the services Desert Regional rendered to the patient were medically necessary.

7

Each time Anthem communicated with Desert Regional, they noted, as specified in their agreements, that verification of eligibility and verification that services were medically necessary were not guarantees a claim would be paid. The April 29, 2016 letter said, "This certification is based on the information provided, and is a certification of medical necessity only and is not a guarantee that benefits will be paid." The same letter noted, "Payments are based upon the terms of your coverage. This certification shall not be construed to expand or alter the benefits available under your benefit plan." Similarly, Anthem's coverage and benefits information provided to the patient on June 13, 2016 said, "Unless otherwise required by state law, this notice is not a guarantee of payment. Benefits are subject to all contract limitations and the members eligibility status on the date of service."

E. *The Patient's Failure to Provide Documentation and the Claim Denial*

BeneSys's records show they sent the third party liability documentation to the patient on May 3, August 4, and November 1, 2016. On January 5, 2017, the Trust followed up by sending the patient a letter explaining the benefits plan "excludes coverage for expenses for which a third party may maintain liability." The letter enclosed "an Assignment and Acknowledgment of Lien for Benefits" and asked the patient to complete "and return the document to the Fund's office as soon as possible." BeneSys's electronic notes show they attempted to call the patient on March 23, 2017 and left a voicemail message advising him they needed the document within a year of the medical

8

services. The same notes show BeneSys sent him a copy of the lien documentation the following day.

Then on April 20, 2017, the Trust sent a letter to the patient explaining they needed the signed lien "[b]efore we can even review claims for possible payment." Despite these efforts, the patient never returned the third party documentation or the lien agreement.

BeneSys kept Desert Regional apprised of these efforts. On August 4, 2016, they advised Desert Regional "the claim is also pending for injury details from the patient to determine any Third Party Liability and they have not responded yet." They told the hospital they would mail another questionnaire to the patient's address and told Desert Regional where they could find a copy of the questionnaire. On November 1, 2016, BeneSys again notified Desert Regional they were still "awaiting injury details from patient," and gave the hospital blank copies of the requested documentation for the patient to "complete and submit it back to us." Over the next seven months, BeneSys gave the hospital status updates and explained why they needed lien documentation from the patient.

Email exchanges from December 2016 to March 2017 show BeneSys also advised Anthem of these problems getting the necessary information from the patient. They reported the "member has not responded yet to our request that a lien agreement be completed and returned" and explained "when we process claims here asking for additional information, the claims are already considered denied, until/unless the

requested information has been received." When Anthem informed BeneSys the patient had completed an accident form, BeneSys explained that a lien agreement was still required.

Eventually, the Trust denied the patient's claim due to his failure to provide the requested documentation. On June 23, 2017, BeneSys informed Desert Regional "there is a one year timely filing limitation on requested information. The member did not provide information timely and we still have not received the Lien agreement; only the accident details." On August 17, 2017, BeneSys again reported that the member didn't send in the signed lien agreement and reported "there is nothing that can be done on this claim as the member never returned the requested information so this claim and other related claims can be processed."

F. *Desert Regional's Appeal of the Denial of Coverage*

On July 18, 2017, Desert Regional sent a document they denominated an appeal to the Trust's Appeals Department. Desert Regional said they understood the Trust would not pay the claim until "accident details information is received from the member in order for you to be able to finish investigating the possible availability of other Insurance, which might be primary." They said they disagreed with the Trust's determination that benefits weren't available under the plan. They objected that "your alleged inability to obtain information from others does not in any way affect your payment obligations."

The Trust never received documentation showing Desert Regional had been authorized to file an appeal on the patient's behalf. Desert Regional didn't file any further

appeals, or bring an action under ERISA's enforcement provision, section 502(a). More than three years later, Desert Regional filed this lawsuit asserting state common law claims against the Trust.

G. *Desert Regional's Lawsuit*

On January 8, 2020, Desert Regional filed a complaint alleging three state law causes of action against the Trust—breach of written contract, quantum meruit, and account stated.[1] The complaint sought to recover $567,764.50, the same amount Anthem had given for the patient's claim under the benefits plan.

The complaint tied Desert Regional's entitlement to relief to the patient's eligibility for health plan benefits under the benefits plan. It identified the Trust as operating "a self-funded benefit plan" and providing "employee health care and welfare benefits for its plan enrollees," identified the patient as an "enrollee of [the Trust's] health plan," and alleged Desert Regional contacted Anthem "to request information regarding the Patient's eligibility, coverage and benefits under the Plan . . . [and] Anthem, specifically represented that the Patient was eligible to receive benefits under the Plan and that the Plan covered the inpatient services the Hospital had provided and would be providing to the Patient."

On October 27, 2021, the Trust moved for summary judgment on three grounds. First, they argued Desert Regional's complaint was completely preempted under section 502(a) of ERISA, title 29 United States Code section1132(a), because "each such state

_____

[1] Desert Regional dismissed its quantum meruit claim on January 6, 2022, and that cause of action is not at issue in this appeal.

11

law cause of action 'duplicates, supplements, or supplants the ERISA civil enforcement remedy.'" They also argued the complaint was barred by "conflict preemption" under section 514(a) of ERISA, title 29 United States Code section 1144(a), because the state law claims "clearly 'relate to' the Benefit Plan administered by the Fund" and "are premised on the alleged denial of benefits made available by that Benefit Plan to beneficiaries such as the Patient." They also argued Desert Regional's claims failed as a matter of law because Desert Regional "has no written agreement with [the Trust], and cannot therefore sue asserting that [the Trust] breached any written contractual obligation," and the account stated claim was time-barred, and independently failed because "there never was an 'account' stated to [the Trust] which it agreed to pay."

Desert Regional opposed summary judgment. They argued the complete preemption doctrine didn't apply because they were not ERISA plan participants or beneficiaries and didn't assert claims that could be brought under ERISA section 502(a)(1)(B) and their state law claims were "independent and in no way based on an obligation under an ERISA plan." They sought to avoid ERISA conflict preemption on the ground their claims didn't "relate to" the Fund's benefits plan, but were "based on an independent written agreement," which they identified as the 2008 agreement they claimed the Trust had "ratified in order to access Anthem's network" of medical providers.

Desert Regional relied on the same ratification theory to support the merits of their breach of contract claim, arguing that, "[h]aving ratified the Agreement, first by

12

arranging with Anthem to participate as an 'Other Payor' and subsequently thereafter by accepting its discounted rates, [the Trust] cannot avoid the Agreement's corresponding obligation to pay for the services." Desert Regional also challenged the Trust's determination that their receiving a third party lien agreement was a precondition to payment of benefits. Finally, Desert Regional argued the elements of their account stated claim have been satisfied.

The Trust's reply brief argued ERISA's remedial scheme is exclusive and comprehensive, so complete preemption would bar the complaint even if Desert Regional could not assert a successful claim under ERISA. They pointed out Desert Regional could have secured an assignment of benefits from the patient and stood in his shoes in filing an ERISA claim in federal court. They also argued the hospital's claims were rooted in the Trust's denial of benefits under the benefits plan. They argued the hospital's attempt to avoid conflict preemption failed for similar reasons. At bottom, the complaint challenged the Trust's denial of ERISA plan benefits, as demonstrated by Desert Regional's own argument that the lien agreement was not a proper basis for the Trust's refusal to pay benefits.

After hearing argument, Riverside County Superior Court Judge Kira Klatchko issued a written ruling. She agreed Desert Regional's "claims are barred by conflict preemption, and grant[ed] summary judgment as prayed for by [the Trust]."

The trial judge held Desert Regional's "claims for breach of contract and account stated do 'relate to' the administration of an ERISA plan and are not premised on breach

of some independent obligation by [the Trust] to pay benefits." The judge held the "claims are fundamentally claims for unpaid ERISA benefits," reasoning that the promises Desert Regional sought to enforce "were not enforceable promises that could be separated from the plans at issue, and in fact were cleverly pleaded attempts to assert what were essentially claims for unpaid ERISA plan benefits."

The trial judge concluded, "The action is not one for an independent tort or contract claim," but rather, "it derives directly from coverage under an ERISA plan and does not seek damages beyond what is allegedly owed under the plan." Consequently, she concluded the "claims are preempted as a matter of law under § 514."

On February 2, 2022, the trial judge entered judgment in the Trust's favor. Desert Regional filed a timely notice of appeal.

## II

## ANALYSIS

Desert Regional argues the trial judge erred by granting the Trust's motion for summary judgment. On appeal from summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Id.* at p. 768.) "The interpretation of ERISA, including whether ERISA preempts state law, is a question of law which we review de novo." (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830,

14

839.) In effect we stand in the shoes of the trial judge who resolved the motion. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 629-630.)

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A summary judgment motion must demonstrate material facts are undisputed. (Code Civ. Proc., § 437c, subd. (b)(1).)

The moving party bears the burden of persuasion that there's no triable issue of material fact and they are entitled to judgment as a matter of law. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) A defendant moving for summary judgment must " 'show[ ] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Id.* at p. 853.) A defendant can meet their burden by presenting affirmative evidence that negates an essential element of plaintiff's claim or by submitting evidence the plaintiff does not possess, and cannot reasonably obtain, evidence needed to support an essential element of their claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; *Aguilar*, *supra*, 25 Cal.4th at p. 855.)

In their complaint, Desert Regional try to avoid saying they seek payment for medical services rendered to plan beneficiaries. However, the fact that benefits under the plan are at issue comes up repeatedly in their allegations. Desert Regional alleges their practitioners treated plan members, provided services covered by the plan, and that the Trust has not paid over half a million dollars in fees for those services. As the trial judge

correctly explained, state law claims for benefits under an ERISA welfare benefit plan are preempted by ERISA under the doctrine of conflict preemption.

"ERISA provides that civil actions may be brought by plan participants, beneficiaries, fiduciaries, and the United States Secretary of Labor. (29 U.S.C. § 1132(a).) Typically, a health care provider in [a hospital's] position would bring a claim for benefits under ERISA in a derivative capacity (standing in the shoes of the patient) under an assignment of reimbursement rights." (*Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 170 (*Port Medical*), citing *Misic v. Building Service Employees Health* (9th Cir. 1986) 789 F.2d 1374, 1377-1379 (*Misic*).)

In *Misic*, the Ninth Circuit held a health care provider who possessed a valid assignment of benefits had standing to sue in a derivative capacity under ERISA. (*Misic*, *supra*, 789 F.2d at pp. 1377-1379.) As the court explained, "Health and welfare benefit trust funds are designed to finance health care. Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect . . . [and] also protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." (*Id.* at p. 1377.)

Desert Regional did not bring a derivative claim for benefits under ERISA, but instead pursued the Trust directly for breach of contract and account stated claims. It's

16

well established, however, that parties can't plead around ERISA, and that "ERISA preemption extends even to state common law causes of action that do not explicitly refer to employee benefit plans." (*Port Medical*, *supra*, 24 Cal.App.5th at p. 171 [cleaned up].) Indeed, "If ERISA claims are pleaded as state law claims, they must be tried under federal law when stripped of their state law disguises." (*AT&T Communications, Inc. v. Superior Court* (1994) 21 Cal.App.4th 1673, 1678 [cleaned up].) As the trial judge held, those principles apply to this case and bar Desert Regional's claims.

"ERISA is a comprehensive federal law designed to promote the interests of employees and their beneficiaries in employee pension and benefit plans. [Citation.] As a part of this integrated regulatory system, Congress enacted various safeguards to preclude abuse and to secure the rights and expectations that ERISA brought into being. [Citations.] Prominent among these safeguards is an expansive preemption provision, found at section 514 of ERISA (29 U.S.C. § 1144 [citations].) [¶] ERISA's preemption clause is conspicuous for its breadth, establishing as an area of exclusive federal concern the subject of every State law that 'relates to' an employee benefit plan governed by ERISA. [Citations.] ERISA preempts 'any and all State laws insofar as they . . . relate to any employee benefit plan,' except laws 'which regulate insurance. . . .' (29 U.S.C. § 1144(a), (b)(2)(A).)" (*Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1050-1051.) "Preemption under section 514 (29 U.S.C. § 1144), known as conflict or ordinary preemption . . . is an affirmative defense to a plaintiff's state law cause of action

17

that entirely bars the claim; that is, the particular claim involved cannot be pursued in either state or federal court." (*Port Medical*, *supra*, 24 Cal.App.5th at pp. 171-172.)

"Initially, the Supreme Court interpreted the 'relate to' language very broadly, holding, 'A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " (*Port Medical*, *supra*, 24 Cal.App.5th at p. 172.) However, as the Second District, Division Three has explained in detail, subsequent case law has narrowed its scope. (*Id.* at pp. 172-176.) For our purposes in this case, what is important is that under current law "a health care provider that treats a beneficiary of a welfare benefit plan may assert a claim in state court against the plan if it is based on an obligation between the plan and the provider *separate from the welfare benefit plan* itself and *does not inquire into entitlement to benefits under the plan*. Thus, where a plan assures a provider that a proposed treatment is covered under the plan but later determines it is not covered, the provider may sue based upon the plan's *independent promise* to the provider to pay for the services rendered." (*Id.* at p. 176, last italics in original.)

Desert Regional argues to the contrary, but we don't have such a circumstance in this case. For one thing, Desert Regional didn't have an agreement with the Trust. Rather, Desert Regional had an agreement with Anthem and the Trust had a separate agreement with Anthem. The first gave Desert Regional access to Anthem's managed care network in return for offering reduced prices. The second gave the Trust access to Anthem's

18

network of health care providers at those reduced prices in return for per member fees.[2] The Trust was not a party to the agreements entered between Desert Regional and Anthem. Nor was Desert Regional a party to the agreement between Anthem and the Trust. Given the nature of these arrangements, there's nothing to establish the Trust's refusal to pay benefits breached an *independent promise to the provider* to pay for the services rendered.

On the contrary, the agreements explicitly recognize health plans like the Trust have their own arrangements with Anthem and that coverage and payment is ultimately a determination under the benefits plans. The 2016 agreement provides Desert Regional "is entitled to payment for . . . Covered Services rendered . . . *subject to the exclusions and limitations* of the relevant Health Benefit Plan" and that claims "will be adjudicated in accordance with the terms and conditions of a Covered Individual's Health Benefit Plan." (Italics added.) The 2008 agreement provides that if Desert Regional "is notified that the Member is eligible, [they are] entitled to payments for services rendered, covered under, and *subject to the exclusions and limitations* of the relevant Benefit Agreement" but specified that even a "guarantee of eligibility is not a guarantee of payment." (Italics added.) In other words, Desert Regional agreed with Anthem (and Blue Cross) both that notification of eligibility would not constitute a promise of payment and that payment would depend on the terms and exclusions of the Trust's benefits plan.

---

[2] Desert Regional identified two agreements with Anthem, one a 2016 agreement and another, a 2008 agreement with Anthem's predecessor, Blue Cross. We need not decide which governed, because both have essentially identical relevant terms and they were entered between Desert Regional and Anthem and Blue Cross, not the Trust.

19

Nor did communications with Desert Regional about the patient establish the Trust made an independent promise to pay the claim. Anthem confirmed the services Desert Regional rendered to the patient were medically necessary. However, Anthem told Desert Regional, the certification confirmed medical necessity only and was not a guarantee that benefits would be paid. "Payments are based upon the terms of your coverage. This certification shall not be construed to expand or alter the benefits available under your benefit plan." On June 13, 2016, Anthem informed the patient, "Benefits are subject to all contract limitations and the members eligibility status on the date of service."

The Trust had communications directly with Desert Regional through their plan administrator, BeneSys. But again, there is no evidence of an independent agreement to pay coverage. On the contrary, the focus of these communications concerned the efforts to overcome a barrier to coverage—the patient's failure to provide a lien allowing the Trust to pursue claims against third parties liable for the injuries. On August 4, 2016, BeneSys advised Desert Regional "the claim is also pending for injury details from the patient to determine any Third Party Liability and they have not responded yet." On November 1, 2016, BeneSys told Desert Regional they were still "awaiting injury details from patient," and gave the hospital blank copies of the requested documentation for the patient to "complete and submit it back to us." BeneSys continued to give the hospital status updates and explain they needed lien documentation from the patient.

BeneSys also advised Anthem of the problems getting required information from the patient. They reported the "member has not responded yet to our request that a lien

20

agreement be completed and returned" and explained "when we process claims here asking for additional information, the claims are already considered denied, until/unless the requested information has been received." When Anthem informed BeneSys the patient had completed an accident form, BeneSys explained that a lien agreement was still required. In the end, the Trust denied the patient's claim due to his failure to provide the requested documentation, which excluded coverage under the terms of the benefits plan.

Under these facts, we agree with the trial judge that Desert Regional "has not put forth evidence that [the Trust] had a separate agreement or understanding with [the hospital] or with Anthem that it would pay benefits under the Plan for the subject patient's care, notwithstanding the salient terms of the plan." (Trial Court Order at p. 8.) It follows under the rule stated in *Port Medical* that Desert Regional's "causes of action relate to and have an impermissible connection to the subject ERISA plan and are therefore preempted under § 514(a)." (Trial Court Order at p. 8.)

Desert Regional attempts to escape this conclusion by conflating the question whether their causes of action "relate to" the Trust's ERISA plan with the question whether their causes of action rely on "a legal duty that exists independently of ERISA." The first question, as the trial judge recognized, is relevant to determining whether a claim should be dismissed as conflict preempted under section 514(a). The second question is relevant to determining whether there is complete preemption under section 502(a)(1)(B). As the Ninth Circuit has explained, "[i]t is not enough for complete

21

preemption that the contract and tort claims 'relate to' the underlying ERISA plan, or that ERISA § 502(a)(1)(B) may provide a similar remedy. The question . . . is whether the complaint relies on a legal duty that arises independently of ERISA." (*Marin Gen. Hosp. v. Modesto & Empire Traction Co.* (9th Cir. 2009) 581 F.3d 941, 950 (*Marin General*).) However, as the different standards make clear, it's possible to establish your state law claim "arises independently" and is not completely preempted yet fail to establish it's not conflict preempted because it in fact "relates to" an ERISA plan. That is precisely what the trial judge concluded in this case.

As a result, Desert Regional's reliance on *Marin General* and *Aetna Health Inc. v. Davila* (2004) 542 U.S. 200 is misplaced. Those cases concerned attempts to remove cases from state to federal court because the claims, alleged as state law causes of action, were disguised ERISA claims. However, as the Ninth Circuit explained, "[a] party seeking removal based on federal question jurisdiction must show either that the state-law causes of action are completely preempted by § 502(a) of ERISA, or that some other basis exists for federal question jurisdiction. If a complaint alleges only state-law claims, and if these claims are entirely encompassed by § 502(a), that complaint is converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' [Citation.] But 'if the doctrine of complete preemption does not apply, even if the defendant has a defense of "conflict preemption" within the meaning of [§ 514(a) ] because the plaintiff's claims "relate to" an ERISA plan, the district court [is] without subject matter jurisdiction.'" (*Marin General*, *supra*,

581 F.3d at p. 945.) Both *Marin General* and *Aetna* concerned whether complete preemption applied, permitting federal jurisdiction. They had no relation to the conflict preemption defense raised in this case.

*Port Medical* is the precedent most like this case. There, Port Medical brought state law claims for breach of implied-in-fact contract, intentional misrepresentation, and quantum meruit against a benefit plan, the plan's board, and the claims administrator. The dispute arose after the administrator denied all claims submitted by Port Medical, and required supporting documentation, after receiving a tip alleging Port Medical was billing the plan for services they hadn't rendered. (*Port Medical*, *supra*, 24 Cal.App.5th at p. 162.) Like Desert Regional, Port Medical didn't style its causes of action as claims for plan benefits, but instead alleged the network agreement between itself and the provider network "created an implied-in-fact contract between the Plan and Port Medical that required the Plan to pay for services rendered to its members." (*Id.* at p. 163.) Port Medical also alleged they had '"provided medically necessary treatments and services' to Plan members and that the Plan authorized Port Medical to perform those services." (*Id.* at p. 164.)

The Court of Appeal held Port Medical's state common law claims for breach of implied contract, intentional misrepresentation and quantum meruit sought "payment for services covered under the Plan" and were therefore "conflict preempted under section 514 of ERISA." (*Port Medical*, *supra*, 24 Cal.App.5th at p. 159.) As the court explained, Port Medical's attempt to base its claims on the network agreement did not avoid

23

preemption, because the agreement "expressly relates to the provision of covered health care services to Plan members" and "anticipate[s] that practitioners are providing covered services to members of a welfare benefit plan." (*Id.* at p. 178.) The same is true in this case. Moreover, as we've noted, here both network agreements explicitly stated that payment of claims was not guaranteed if plan exclusions applied.

Unlike in this case and in *Port Medical*, the medical provider who sued in *Morris B. Silver M.D., Inc. v. International Longshore & Warehouse Etc.* (2016) 2 Cal.App.5th 793, *did* base his state law claims on allegations that "the Plan orally agreed to pay [the provider] for health care services in the specified amounts, authorized the provision of those services and then failed to pay as agreed." (*Id.* at p. 806.) Indeed, before rendering services, the medical provider, who was out-of-network "called the Plan to determine the amount it would pay. The information supplied was memorialized in writing by [the medical provider's] personnel on 'an insurance verification sheet.'" (*Id.* at pp. 796-797.) The plan then regularly paid the provider's invoices, but abruptly stopped and asserted the services were not covered and neither the plan nor the patient had any obligation to pay. (*Ibid.*) The Court of Appeal held the medical provider was not "seeking compensation for the Plan's decisions to deny coverage under the terms of an ERISA plan; its alleged right to reimbursement does not depend on the Plan's terms. Rather, the claims are predicated on a garden-variety failure to make payment as promised for services rendered." (*Id.* at p. 807.) Here, Desert Regional was unable to identify any such

independent promise to pay, and the Trust pointed out that every communication about benefits under the plan explicitly disclaimed any promise to pay.

Desert Regional also attempts to avoid the effect of the provisions of their agreements with Anthem which state that plan exclusions may preclude payment. They argue the express "incorporation" of the plan's exclusions was part of the 2016 network provision which says Desert Regional "is entitled to payment for Health Services that are Covered Services rendered, covered under, and *subject to the exclusions and limitations of the relevant Health Benefit Plan*." (Italics added.) The 2008 agreement has the same provision but makes entitlement to payment turn on "the exclusions and limitations of the relevant *Benefit Agreement*." (Italics added.) The difference matters, they argue, because the term "Health Benefit Plan" refers to the Trust's health plan, but the term "Benefit Agreement," which they say is defined to mean "arrangements established by . . . persons or entities utilizing the Managed Care Network pursuant to an agreement with BLUE CROSS," refers to a separate agreement between the Trust and Anthem, not the Trust's benefits plan.

We conclude this contract interpretation is faulty. The provisions in the two agreements are exactly parallel. The only difference is use of the term "Health Benefit Plan" instead of "Benefits Agreement," but the definitions of the two terms are the same. The 2016 agreement defines "Health Benefit Plan" to include "arrangements established by Anthem or by persons or entities utilizing the Managed Care Network pursuant to an agreement with Anthem." The 2008 Agreement defined "Benefit Agreement" to include

25

"arrangements established by Blue Cross or by persons or entities utilizing the Managed Care Network pursuant to an agreement with Blue Cross." Both terms plainly refer to the Trust's benefits plan, which means payment is subject to the plan's exclusions and limitations. We therefore agree with the trial judge that there is no evidence of an independent agreement and "[t]he action is not one for an independent tort or contract claim" but "derives directly from coverage under an ERISA plan and does not seek damages beyond what is allegedly owed under the plan." (Trial Court Order at p. 8.)

Finally, Desert Regional objects to the trial judge's blanket rejections of its motions to exclude evidence. They say they made 12 separate evidentiary objections but identify and argue against only the denial of their "objection to reliance [on] the 2016" agreement with Anthem. We review evidentiary rulings for abuse of discretion and reverse only on a showing of prejudicial error. We need not reach the question of error here, because Desert Regional has not shown prejudice. They object that the trial judge should have excluded the 2016 network agreement because it was executed after the patient incurred expenses. As we've explained, however, our decision that Desert Regional's claims relate to the payment of benefits under an ERISA plan and are therefore subject to conflict preemption applies under either agreement. We conclude the trial judge's evidentiary ruling did not constitute a miscarriage of justice even if erroneous, a question we do not reach.

## III

## DISPOSITION

We affirm the judgment. Respondent Teamsters and Food Employers Security

Trust Fund are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH_____
                                                                                    J.

We concur:

RAMIREZ_____
                    P. J.

MENETREZ_____
                    J.